* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At all times relevant to plaintiff's claim, an employer-employee relationship existed between plaintiff and defendant employer, and the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. Plaintiff's average weekly wage at the time of her injury was $527.50, leading to a weekly workers' compensation rate of $351.84 based on the Form 22 completed in this matter.
3. Defendants responded to plaintiff's claim with a Form 63, dated June 1, 2000. Thereafter, on July 21, 2000, defendants filed a Form 61.
4. On June 11, 2001, the parties participated in a mediated settlement conference in Goldsboro, North Carolina. Plaintiff was represented by Gene Riddle of Whitley Jenkins Riddle, and was accompanied by her husband. Vickie Taylor appeared on behalf of defendant-employer, who was represented by Justin D. Robertson. The mediator was Wade Stanley.
5. At that mediation, the parties executed a Mediated Settlement Agreement dated June 11, 2001, purporting to resolve this claim in its entirety.
6. On June 12, 2001, defendants submitted to plaintiff's counsel a Compromise Settlement Agreement and Release for execution.
7. The issue submitted by plaintiff for decision by the Deputy Commissioner was whether the Mediation Settlement Agreement was fair and just and in the interest of all parties.
 * * * * * * * * * * *
Based upon all of the competent evidence of record, the undersigned makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 58 years old. She had worked as a mold operator for defendant-employer from 1986 until April 24, 2000. Defendant-employer is in the business of manufacturing rubber parts that are used as sealants for automobiles. Plaintiff worked a significant number of overtime hours and her usual schedule was twelve hours per day, six to seven days per week.
2. In 1993, plaintiff began having breathing problems. At first, she attributed her problems to colds and treated herself with cold medications. However, when her breathing problems continued and worsened, plaintiff began to suspect her employment as the cause of her problems.
3. On April 25, 2000, plaintiff began seeing Dr. Amy Price at Northern Wayne Family Practice for her condition. Dr. Price removed plaintiff from work and prescribed medications. Dr. Price also referred plaintiff to Dr. Phillip D. Mayo, a pulmonary specialist, for further evaluation.
4. On June 1, 2000, defendant filed an Industrial Commission Form 63,Notice to Employee of Payment of Compensation Without Prejudice and on July 21, 2000, defendants filed a Form 61, which denied plaintiff's claim. On August 30, 2000, plaintiff filed an Industrial Commission Form 18, Notice of Accident to Employer and Claim of Employee, Representative, or Dependent for Workers' Compensation Benefits.
5. Plaintiff retained an attorney, Gene Riddle, to represent her in her claim against defendants and on June 11, 2001, prior to filing a hearing request, the parties held a voluntary mediation conference to attempt to resolve this claim.
6. On June 11, 2001, Dr. Mayo sent a letter to Mr. Riddle regarding plaintiff's condition. Mr. Riddle had this letter in his possession during the mediation. In response to Mr. Riddle's inquiry of whether plaintiff's condition was work-related, Dr. Mayo stated in the letter that occupational asthma is difficult to diagnose, that there are two chemicals strongly associated with the creation of asthma, and that he did not know whether plaintiff had been exposed to those chemicals but if she had "her asthma may be strictly occupationally-related and caused."
7. At the time of the mediation, no doctor had specifically stated in writing that plaintiff's condition was work-related.
8. Further, at the time of the mediation, plaintiff was unaware of any workers' compensation claims similar to her own against defendant-employer. At the mediation, plaintiff's counsel, Mr. Riddle, asked defendants' counsel, Mr. Robertson, whether there had been other claims in which employees of defendant had symptoms similar to those of plaintiff. Vickie Taylor, the defendant's company nurse, was present at the mediation and stated that to her knowledge, there had been no other such cases. Mr. Robertson informed Mr. Riddle that Ms. Taylor's response would be defendants' response if Mr. Riddle were to ask the same question in discovery. Mr. Riddle relied on Ms. Taylor's assertion in advising plaintiff and plaintiff also relied on this information in deciding whether to sign the agreement.
9. At the mediation, the parties agreed to settle plaintiff's claim for $25,000.00. Although convinced that plaintiff's problems were severe, Mr. Riddle felt the agreement was fair because no employees of defendant-employer had similar claims and because, at that point, no doctors had specifically said plaintiff's condition was work-related. On June 11, 2001, after reaching an agreement, the parties signed a one page Mediation Settlement Agreement.
10. Plaintiff felt the amount agreed upon was unfair because she continued to have medical problems. However, she signed the agreement because she thought that there were no other employees with similar conditions who had proven their condition was work-related, because her doctors had not provided any documentation that her condition was work-related, and because she was worried about being able to pay her doctors' bills. Plaintiff was last covered by health insurance on October 9, 2000, and had no health insurance through her spouse.
11. Plaintiff testified that after mediation, she began to question her decision to sign the agreement. She decided the agreement was not in her best interest and informed her attorneys she did not want to abide by its terms. Accordingly, plaintiff would not sign the Compromise Settlement Agreement prepared by defendants after the mediation. If she were to sign it, the Compromise Settlement Agreement would be submitted to the Industrial Commission for its approval. Plaintiff felt she needed evaluation by physicians who specialized in treating her type of condition.
12. On August 15, 2001, plaintiff presented to Dr. Cynthia Brown, a pulmonary specialist at East Carolina School of Medicine. Dr. Brown classified plaintiff's asthma as severe persistent. Dr. Brown performed tests and modified plaintiff's medications in an attempt to improve her symptoms. Dr. Brown continued to treat plaintiff through November 25, 2003.
13. On July 24, 2002, plaintiff presented to Dr. Dennis Darcy, an occupational medicine doctor at Duke University Medical Center, for evaluation. Mr. Riddle referred plaintiff to Dr. Darcy because of his expertise and medical reputation. Dr. Darcy opined that plaintiff's history suggested, "respiratory irritants of multiple chemical classes were present in the workplace at reasonably high levels triggering occupational asthma and persistent airway hyper reactivity."
14. On or about August 12, 2002, Mr. Riddle filed a Form 33 on behalf of plaintiff, requesting a hearing. Defendant responded on August 19, 2002, asserting as a defense that plaintiff had agreed to settle her case and that defendant had asked Chief Deputy Commissioner Gheen to order plaintiff to sign a Compromise Settlement Agreement.
15. On February 25, 2003, Dr. Brown wrote a letter stating that plaintiff suffered from reactive airways disease syndrome (RADS), that plaintiff's symptoms and her work environment are "intimately related" and that plaintiff's employment put her at an increased risk of developing asthma. Dr. Brown's opinion was based on plaintiff's job history, the onset of plaintiff's condition and plaintiff's exposure to "large quantities of heated air containing rubber particles, dust and chemicals released in the heating/molding process.
16. At the hearing before the Deputy Commissioner, Mr. Riddle testified that if he had had Dr. Brown's February 25, 2003, letter and Dr. Darcy's July 24, 2002, report at the time of the mediation, he would have felt that plaintiff could have prevailed at a hearing and would have advised plaintiff accordingly.
17. Plaintiff was aware prior to mediation that her coworker, Sandra Hall, also had breathing problems. However, plaintiff was unaware until after mediation that Ms. Hall was out of work and had pursued a workers' compensation claim. Sometime after the mediation, plaintiff encountered Ms. Hall in the grocery store and Ms. Hall informed plaintiff of her claim.
18. On June 12, 1995, the Industrial Commission filed an opinion and award favorable to Ms. Hall, Industrial Commission Claim Number 247195. In that case, the Industrial Commission found that Ms. Hall began employment with defendant in 1986, that she was exposed to WD-40m Loctite Prism, mineral spirits, acetone and other chemicals and that she developed nausea, diarrhea, a persistent cough and wheezing. The Commission concluded that Ms. Hall's "hyper reactive airways disease or asthma is due to causes and conditions which are characteristic of and peculiar to her employment. . . ." and that Ms. Hall's employment placed her at an increased risk for developing the disease.
19. After learning of Ms. Hall's case and seeing Dr. Brown and Dr. Darcy, Ms. Smith decided she definitely would not sign a Compromise Settlement Agreement. At that time, Ms. Smith retained a new attorney to help her pursue her case.
20. Plaintiff testified, and the Full Commission finds as fact, that being told there were no other similar workers' compensation claims was material to her decision to settle her case.
21. Regardless of whether the plant nurse for defendant-employer intended to mislead plaintiff regarding the existence of other claims of occupational lung disease, plaintiff was in fact misled when she was told that there were no other claims of occupational lung disease against this employer.
22. The Full Commission finds that both plaintiff and defendant proceeded under the same misconception regarding other claims of occupational lung disease against defendant-employer and relied on this information in settlement negotiations. This information influenced their conduct during mediation.
23. In addition, the Full Commission finds that the Deputy Commissioner properly admitted and considered the medical evidence that plaintiff submitted after the date of the Mediated Settlement Agreement in her determination of the fairness of the Agreement.
24. Accordingly, the Full Commission finds that the Mediated Settlement Agreement signed on June 11, 2001, would not be fair, just, or in the interest of the parties since both plaintiff and defendant entered into the Agreement based on the mutual misconception that no other employee had filed a claim similar to plaintiff's for an occupational lung disease and without the medical evidence that was subsequently introduced into evidence at the hearing before the Deputy Commissioner.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Compromise settlement agreements, including mediated settlement agreements are governed by general principles of contract law. Lemly v.Colvard Oil Co., 157 N.C. App 99, 577 S.E.2d 712 (2003).
2. However, the Supreme Court has long held that the Industrial Commission, in its judicial capacity, must undertake a full investigation for determining whether or not a voluntary settlement is fair and just. The law thus undertakes to protect the rights of the employee in contracting with respect to his injuries. Vernon v. Mabe Builders,336 NC 425, 444 SE2d 191 (1994). The Court has affirmed this position in stating that the Industrial Commission stands by to assure fair dealings in any voluntary settlement. Id.
3. Even if the mediated settlement agreement reached by the parties were to be found to be a binding agreement, the Commission must still consider its approval of the mediated settlement agreement pursuant to Rule 502(1) of the Workers' Compensation Rules, i.e., is the agreement "deemed fair and just and in the best interest of all parties." Lemly v.Colvard Oil, 157 N.C. App. 99, 103, 577 S.E.2d 712, 715 (2003). In the present case, the Full Commission has found that the Mediated Settlement Agreement is not fair, just or in the interests of the parties and therefore cannot be approved. N.C. Gen. Stat. § 97-17.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. The Full Commission finds that the Mediated Settlement Agreement is not fair, just or in the interest of the parties and therefore, cannot be approved. Accordingly, this claim is referred to Chief Deputy Gheen to be placed on the next available hearing docket in the region in which the plaintiff resides.
2. Defendants shall pay the cost of this action.
This the __ day of ____ 200__.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/_________________ BUCK LATTIMORE CHAIRMAN