* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all times relevant to this claim.
3. Plaintiff's average weekly wage is sufficient to yield the maximum compensation rate for 2003 or 2004, as per applicable law.
4. Plaintiff was out of work from April 14, 2004 until August 30, 2004.
5. On April 14, 2004, plaintiff underwent carpal tunnel surgery on his right hand.
6. Defendants submitted a Form 60 to the Industrial Commission on April 28, 2004, notifying the Commission that they commenced payment of workers' compensation weekly benefits beginning on April 21, 2004.
7. If the Commission find plaintiff's claim compensable, defendants are entitled to a credit in the amount of the workers' compensation benefits already paid by defendants from April 14, 2004 through August 3, 2004. Additionally, defendants would be entitled to a credit equal to the amount of the Sickness and Accident benefits paid to plaintiff from August 4, 2004 through August 29, 2004, subject to plaintiff's claim for a reduction in this credit to pay his attorney's fee.
8. The following exhibits were stipulated into the record at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1 — the Pre-trial Agreement
 b. Stipulated Exhibit 2 — medical records from Dr. Flanagan
c. Stipulated Exhibit 3 — a pre-work screen
 d. Stipulated Exhibit 4 — a mediation settlement agreement
e. Stipulated Exhibit 5 — Industrial Commission forms
 f. Stipulated Exhibit 6 — a videotape of a second stage tire builder job
 g. Stipulated Exhibit 7 — a portion of plaintiff's employment file
 h. Stipulated Exhibit 8 — correspondence from counsel for defendants to Dr. Edwards dated January 24, 2005
 i. Stipulated Exhibit 9 — correspondence from counsel for defendants to Dr. Edwards dated April 4, 2005.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the Deputy Commissioner's hearing, plaintiff was 28 years old, with his date of birth being May 8, 1976. Plaintiff is a high school graduate and received an Associates Degree in Industrial Technology from Fayetteville Technical Community College. Additionally, plaintiff served with the United States Army for 2 years and 9 months.
2. Plaintiff began working for defendant-employer on June 1, 1998 as a Second Stage R3 Tire Builder. At that time, plaintiff was working 12 hours per day for a total of 42 hours per week. During his 12-hour shifts, plaintiff was initially expected to build 670 tires per shift, which was later reduced to 630 tires per shift.
3. In November of 2001, plaintiff's work schedule changed to eight-hour shifts, six days per week, for a total of 48 hours per week. During his eight-hour shifts, plaintiff had two 10-minute breaks and one 20-minute break. When plaintiff began working the eight-hour shifts, he was expected to build 416 tires per shift. On the days plaintiff worked on the overlay tire building machine as opposed to his regular machine, the expected production rate was lower because that machine required an extra step of putting the overlay on each tire carcass.
4. A videotape of the second stage tire builder job was stipulated into evidence at the Deputy Commissioner's hearing. The videotape of the second stage tire builder job demonstrates the main steps of the second stage tire building cycle as it occurs between the pre-inflator and drum portions of the tire building machine. However, there are regular aspects of the second stage tire building job that are not shown on the videotape.
5. Plaintiff testified that prior to experiencing problems with his hands, he was easily able to meet 100 percent of the expected production rate for the shift he worked and the type of tire he built.
6. Plaintiff began experiencing problems with his hands in 2002, but did not notify defendant-employer of these initial symptoms at that time. At the time of the onset of his symptoms, plaintiff was working on the overlay tire machine. Plaintiff did not seek medical treatment for his hands until 2003, and did not miss any time from work because of his hands until his carpal tunnel surgery on April 14, 2004.
7. Following the right carpal tunnel release procedure performed by Dr. James P. Flanagan on April 14, 2004, plaintiff received 16 weeks of total disability benefits pursuant to a mediated settlement agreement. Thereafter, plaintiff remained out of work for an additional four weeks, during which time he received benefits under defendant-employer's Sickness and Accident plan.
8. On August 26, 2004, Dr. Flanagan released plaintiff to return to work in his regular job as a second stage tire builder. Dr. Flanagan, plaintiff's treating physician, has not medically excused plaintiff from work since that date.
9. Subsequent to his return to work for defendant-employer, plaintiff underwent multiple nerve conduction studies, which revealed that his median nerve had not completely recovered following the right carpal tunnel release. Dr. Flanagan felt that plaintiff's lack of a full recovery following his right carpal tunnel release was due to the repetitive nature of his job duties with defendant-employer.
10. At his deposition, Dr, Flanagan testified that the second stage tire builder job which plaintiff performed for defendant-employer was a repetitive job that requires a lot of gripping, grasping, and impact on the hands. Additionally, Dr. Flanagan testified that plaintiff had no other risk factors for developing carpal tunnel syndrome other than his work as a second stage tire builder. Dr. Flanagan further testified that plaintiff's employment with defendant-employer placed him at an increased risk for developing bilateral carpal tunnel syndrome as compared to members of the general public not so employed. Dr. Flanagan stated that plaintiff's employment with defendant-employer significantly contributed to the development of his bilateral carpal tunnel syndrome. Dr. Flanagan's opinions on increased risk and causation are based on the videotape of the second stage tire builder job, and the additional information provided by plaintiff at hearing regarding additional aspects of his job not shown on the video.
11. Dr. George S. Edwards, Jr., a medical expert retained by defendants, stated that plaintiff's employment with defendant-employer did not place him at an increased risk for developing carpal tunnel syndrome. Dr. Edwards further testified that plaintiff's employment with defendant-employer did not cause or significantly contribute to the development of his carpal tunnel syndrome.
12. Based upon the totality of the credible lay and medical evidence of record, the Full Commission gives greater weight to the opinions of Dr. Flanagan than to those of Dr. Edwards. This finding is in part based upon the fact that Dr. Edwards' opinions are based solely on the videotape of the job, which is not a complete depiction of plaintiff's job duties.
13. Dr. Flanagan recommended that plaintiff undergo a left carpal tunnel release. Plaintiff is willing to have the surgery but testified that he cannot afford to have the procedure since the salary continuation benefits he would receive during his time out of work would not be as much as workers' compensation benefits, and it would be too difficult to make ends meet.
14. On March 4, 2004, the parties participated in a mediated settlement conference. As a result of this mediation, the parties entered into a "Mediation Settlement Agreement" in which defendants agreed to pay "all authorized related medical expenses for plaintiff's bilateral carpal tunnel syndrome release surgery and follow-up by Dr. Flanagan." Defendants also agreed to pay "without prejudice . . . a maximum of 16 weeks of weekly benefits from the date plaintiff initially undergoes carpal tunnel release surgery or up until he returns to work, if sooner. . . ." The Mediation Settlement Agreement further stated that "[i]f defendant does not contest the case within 60 days of return to work or 16 week period, whichever occurs sooner, the case will be deemed to be accepted. If contested, defendant agrees to expedited hearing." The Mediation Settlement Agreement was signed by the parties and the Full Commission finds that it is also sufficiently definite and certain to represent a meeting of the minds and a contract between the parties on the issues in dispute.
15. Prior to the mediation, defendants filed an Industrial Commission Form 61 on August 29, 2003. Subsequent to the mediation, defendants did not file a Form 61 or otherwise give any written notice within the 16 week period following the mediation, which was the applicable time period set forth in the March 4, 2004 Mediation Settlement Agreement, that they were contesting the compensability of plaintiff's claim.
16. Defendants contend that the language of the Mediation Settlement Agreement did not require them to re-deny the claim within the specified time period and that it merely noted that the claim could be contested at that point. Despite defendants' contention, the Full Commission finds the language of the Mediation Settlement Agreement to be unambiguous in setting forth the period of time from either the date plaintiff returned to work or from the date of the mediation, to contest the claim. Because defendants did not "contest the case" within the applicable time period pursuant to the contractual terms of the Mediated Settlement Agreement, defendants have accepted the compensability of plaintiff's claim.
17. Defendants did file an Industrial Commission Form 60, which was received by the Industrial Commission on May 4, 2004. Defendants assert that the Form 60 was mistakenly filed by defendant-carrier to memorialize the commencement of payment of indemnity compensation pursuant to the Mediation Settlement Agreement. Regardless of the propriety of defendants' filing of the Form 60, it only accepts an "injury" and not an occupational disease.
18. The Full Commission finds that plaintiff's employment with defendant-employer placed him at an increased risk for developing bilateral carpal tunnel syndrome as compared to members of the general public not so employed. Additionally, plaintiff's employment with defendant-employer significantly contributed to the development of his bilateral carpal tunnel syndrome.
19. Because plaintiff's disability began in 2004, the applicable weekly compensation rate in this case is $688.00, the maximum compensation rate for 2004.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a result of the repetitive nature of his job duties, plaintiff sustained bilateral carpal tunnel syndrome, which was caused by and due to causes and conditions characteristic of and peculiar to plaintiff's employment with defendant-employer. Plaintiff's bilateral carpal tunnel syndrome is not an ordinary disease of life to which the general public not so employed is equally exposed and is therefore a compensable occupational disease. N.C. Gen. Stat. § 97-53(13); Booker v. Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
2. Because defendants did not "contest the case" within the applicable time period, pursuant to the contractual terms of the Mediation Settlement Agreement, defendants are deemed to have accepted the compensability of plaintiff's claim for bilateral carpal tunnel syndrome. Lemly v. Colvard Oil Co.,157 N.C. App. 99, 577 S.E.2d 712 (2003).
3. As the result of his occupational disease, plaintiff is entitled to have defendants pay total disability compensation at the rate of $688.00 per week for the period of April 14, 2004 through August 29, 2004. N.C. Gen. Stat. § 97-29.
4. Defendants are entitled to a credit for the total disability compensation paid plaintiff from April 14, 2004 through August 3, 2004 and for the Sickness and Accident benefits paid plaintiff from August 4, 2004 through August 29, 2004. N.C. Gen. Stat. §97-42.
5. As the result of his occupational disease, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including, but not limited to, left carpal tunnel surgery. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff total disability compensation at the rate of $688.00 per week for the period of April 14, 2004 through August 29, 2004.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his bilateral carpal tunnel syndrome, including, but not limited to, his left carpal tunnel surgery and treatment related thereto.
3. Defendants are entitled to a credit for the 16 weeks of total disability benefits already paid and for the Sickness and Accident benefits paid from August 4, 2004 through August 29, 2004.
4. A reasonable attorney's fee of 25% of the compensation awarded in paragraph 1 of this Award is approved for plaintiff's counsel. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs.
This 4th day of January 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER