* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all times relevant herein.
3. National Benefits America was the workers' compensation carrier for defendant-employer at all times relevant herein.
4. On September 23, 2000, plaintiff injured her back while lifting a patient. The injury by accident arose out of and in the course of plaintiff's employment with defendant-employer.
5. Defendants filed a Form 63 on March 14, 2001, and have since accepted plaintiff's claim for injury to her back.
6. Plaintiff's authorized treating physician, Dr. Alfred E. Geissele performed a L4-5 discectomy, right L4-5 hemilaminotomy and medical facetectomy and foraminotomy on April 20, 2001.
7. The parties mediated this matter on June 3, 2002. Immediately thereafter, after initially signing the mediation memorandum, the plaintiff notified the defendants that she would not accept the settlement and withdrew her consent to the settlement. *Page 3 
8. The issues to be decided from this hearing are the following:
 a) Whether the mediated agreement should be enforced;
 b) What is plaintiff's correct average weekly wage;
 c) Whether plaintiff's current complaints of back pain is related to her admittedly compensable injury by accident;
 d) Whether plaintiff continues to be disabled since December 31, 2000 as a result of her admittedly compensable injury by accident;
 e) Whether plaintiff is entitled to mileage and other medical reimbursements as a result of plaintiff obtaining treatment for her continuing medical conditions;
 f) Whether plaintiff is entitled to obtain medical treatment from Drs. Fenk-Mayer and Bertagnoli; and
 g) Whether plaintiff is entitled to any further benefits under the North Carolina Workers' Compensation Act.
 * * * * * * * * * * * EXHIBITS
The following documents were admitted into evidence as exhibits:
 a) Stipulation #1, plaintiff's medical records and rehab records;
 b) Stipulation #2, I.C. forms and orders;
 c) Stipulation #3, medical payment history;
 d) Defendants' #1, mediation agreement of June 3, 2002; and
 e) The compromised settlement agreement with attachments.
 * * * * * * * * * * * *Page 4 
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained an admittedly compensable injury by accident on September 23, 2000, while in the course and scope of her employment with defendant-employer. Defendants accepted plaintiff's claim on or about November 1, 2001, by filing a Form 60.
2. Plaintiff did not seek medical treatment for her back until December 13, 2000, at which time she was seen and treated by Dr. Bruce M. Ehlert, a chiropractor. Thereafter, plaintiff was seen and treated at Burke Occupational Health.
3. Plaintiff had a MRI on or about January 26, 2001, which showed a large central to right sided disc herniation at L4-5, a mild central bulge or herniation at L3-4, and a moderate central bulge or herniation at L5-S1. It also revealed that plaintiff had disc degeneration in the lower three lumbosacral levels.
4. Plaintiff was seen and evaluated by Dr. Alfred E. Geissele on or about March 30, 2001. Dr. Geissele diagnosed plaintiff's condition as degenerative lumbar disc disease, lumbar disc herniation at L4-5, and severe lumbar radiculitis, right lower extremity secondary to the disc herniation at L4-5. Dr. Geissele performed a right L4-5 hemilaminotomy, medial facetectomy, and foraminotomy with right L4-5 diskectomy on plaintiff on April 20, 2001. Dr. Geissele's postoperative diagnosis was right L4-5 disc herniation.
5. Plaintiff had a post-surgery follow-up visit with Dr. Geissele on May 31, 2001, and the only pain she was experiencing was slight discomfort along the medial aspect of the right knee, otherwise her condition was improving. It was noted that plaintiff was able to ambulate without a limp and that bilateral straight leg tests were negative. *Page 5 
6. On July 18, 2001, plaintiff returned to Dr. Geissele as a follow-up to her surgery. Plaintiff again reported that her back complain had completely resolved, but continued to complain of knee pain. It was again noted that plaintiff was able to ambulate without a limp and that bilateral straight leg tests were negative. Dr. Geissele treated plaintiff's right knee with an injection. Although Dr. Geissele was prepared to release plaintiff to return to work with respect to her back, he declined to do so because of plaintiff's knee problems.
7. On November 21, 2001, Dr. Geissele assigned a five percent (5%) permanent partial disability rating to plaintiff's back. Dr. Geissele also assigned permanent restrictions of "minimized bending and twisting, frequent position changes as needed during the course of work and frequent lifting not to exceed 25 pounds with occasional lifting not to exceed 50 pounds." Dr. Geissele was of the opinion that plaintiff could return to work as a nurse with the use of good body mechanics and if she sought assistance with lifting requirements. With regard to plaintiff's knee pain, Dr. Geissele referred plaintiff's to his partner for treatment.
8. The parties mediated plaintiff's workers' compensation claim on June 3, 2002. Plaintiff was represented by counsel at all times during the mediation. A mediation agreement was entered into, which was signed by plaintiff, her attorney, and defendants' representatives. The mediation agreement indicated that the parties had reached a "full and final clincher settlement" of plaintiff's workers' compensation claim "as a result of the need for finality in the litigation." The mediation agreement provided that plaintiff would accept $50,000.00 "in full and final clincher agreement of plaintiff's workers' compensation claim." In addition, defendants agreed to continue the payment of temporary total disability benefits until the Industrial Commission entered an order approving the clincher agreement and to pay the entire mediator's fee. *Page 6 
9. Plaintiff subsequently refused to execute the Compromise Settlement Agreement prepared in connection with the settlement reached at mediation. At the hearing before the Deputy Commissioner, plaintiff acknowledged that she signed the mediation agreement, and that she was able to seek the advice and counsel of her attorney who was present throughout the entire negotiation process. Although the record shows that plaintiff admitted to vocational case manager Jeff Tidwell that she "tried to settle her case but had second thoughts at the last moment," plaintiff has attempted to assert that she thought she was settling the claim only for her knee injury, and that she did not know the agreement was binding. Plaintiff's assertions are found to be not credible considering that plaintiff was represented by counsel throughout the entire negotiation process, and the Industrial Commission number assigned to her back claim (I.C. No. 122554) was referenced throughout the agreement. The Full Commission finds that plaintiff has presented insufficient evidence of fraud, misrepresentation, undue influence, or mutual mistake in which to set aside the mediation agreement. Thus, the Full Commission finds the mediated agreement is binding and enforceable.
10. Since June 2002, when the parties entered into the mediation agreement to settle this claim, plaintiff's back condition has worsened. Plaintiff returned to Dr. Geissele on October 25, 2002 and reported that her back and leg symptoms had returned. X-rays of plaintiff's spine showed degenerative changes at L4-5 and L5-S1. After conservative treatment failed, Dr. Geissele recommended that plaintiff have fusion surgery, possibly involving three levels of her lumbar spine. Plaintiff has obtained second opinions from Dr. Andrea Fenk-Mayers and Dr. Bertagnoli, who agree that plaintiff is in need of further surgery, but are of the opinion that plaintiff would benefit from disc replacement as opposed to another fusion surgery. Plaintiff asserts that the June 3, 2002, mediation agreement is not binding and, thus, defendants are *Page 7 
responsible for providing continuing indemnity benefits and medical care for her back. However, the Full Commission finds that because the June 3, 2002, mediation agreement is binding and enforceable, defendants have no obligation to provide benefits beyond that which was provided in the mediation agreement.
11. In reviewing the June 3, 2002, mediation agreement, the Full Commission notes that the Industrial Commission must determine the fairness and justness of the agreement from the medical evidence at the time the agreement was entered into by the parties. At the time the parties in the present case entered into the mediation agreement, plaintiff had been released at maximum medical improvement with respect to her back injury and released to return to work with minimal restrictions. Plaintiff had been given a five percent (5%) permanent partial disability rating to her back. Moreover, the medical record shows that plaintiff specifically denied any symptom of back pain to her treating physician and had not sought treatment for her back for over ten months prior to the mediation. Based on the totality of the medical evidence at the time the June 3, 2002 mediation agreement was entered into by the parties, the Full Commission finds that the $50,000.00 to be provided to plaintiff by defendants in exchange for the full and final settlement of this claim was fair and just to both parties.
12. As to plaintiff's claim for indemnity benefits and medical treatment for her right knee, the Full Commission takes judicial notice of the April 30, 2003 Order of the late Deputy Commissioner Nancy W. Gregory, who dismissed plaintiff's right knee claim with prejudice for plaintiff's failure to prosecute the claim. Plaintiff had requested a hearing on the knee injury on December 10, 2001, and a hearing was set for April 22, 2003; however, plaintiff did not appear at the hearing. In dismissing the right knee claim for failure to prosecute, Deputy Commissioner Gregory found that plaintiff had ample notice of the hearing, but decided not to attend. Plaintiff *Page 8 
did not appeal the April 30, 2003 Order dismissing her claim with prejudice. The Full Commission finds that pursuant to the doctrine ofres judicata, the April 30, 2003 Order dismissing plaintiff's claim with prejudice constitutes the final judgment of the Commission regarding plaintiff's right knee claim and, thus, plaintiff's right knee claim cannot be re-litigated at this juncture.
13. Plaintiff has received disability compensation from defendants in the amount of $491.28 per week, based upon an average weekly wage of $736.89 per week. However, the Form 22 submitted in this matter shows plaintiff's correct average weekly wage to be $731.36 per week, which yields a compensation rate of $487.60 per week. Although the Deputy Commissioner found that plaintiff is entitled to depend on the higher average weekly wage for purposes of this claim, the Full Commission finds that because defendants properly raised the issue of plaintiff's average weekly wage at hearing before the Deputy Commissioner, plaintiff is entitled to rely on the higher average weekly wage of $491.28 only on compensation that was paid prior to October 18, 2004, the date of hearing before the Deputy Commissioner. Any compensation, if any, paid to plaintiff after October 18, 2004, should reflect the correct weekly compensation rate of $487.60, per the Form 22 in this matter.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. An agreement reached during mediation, which is voluntarily signed by the parties, is a valid contract enforceable by either party and, thus, a fully executed mediated settlement agreement constitutes a binding compromise settlement agreement which must be *Page 9 
submitted to the Industrial Commission for approval. See Lemly v.Colvard Oil Co., 57 N.C.App. 99, 577 S.E.2d 712 (2003); see alsoChappell v. Roth, 141 N.C. App. 502, 539 S.E.2d 666 (2000). Furthermore, the Courts have continually held that neither party, after voluntarily executing a settlement agreement, can then "back out" of that settlement agreement and refuse to be bound by it. Id. As in Lemly, the settlement agreement reached in the present case is enforceable. Id. Thus, the Full Commission deems the mediation agreement in the present matter to be a binding and enforceable compromise settlement agreement. Id.
2. "No party to any agreement for compensation approved by the Commission shall deny the truth of the matters contained in the settlement agreement, unless the party is able to show to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence, or mutual mistake, in which event the Commission may set aside the agreement." N.C. Gen. Stat. § 97-17. In the present case, plaintiff has presented insufficient evidence of fraud, misrepresentation, undue influence, or mutual mistake, in which to set aside the mediation agreement. Id.
3. The Industrial Commission must determine the fairness and justness of the agreement from the medical evidence at the time the agreement was entered into by the parties. See Lewis v. Craven Reg'l Med. Ctr.,134 N.C. App. 438, 518 S.E.2d 1 (1999); N.C. Gen. Stat. § 97-17(b)(1). Based on the totality of the medical evidence at the time the June 3, 2002 mediation agreement was entered into by the parties, the Full Commission deems that the $50,000.00 to be provided to plaintiff by defendants in exchange for the full and final settlement of this claim was fair and just to both parties.
4. The April 30, 2003 Order of the Commission dismissing plaintiff's claim with prejudice constitutes the final judgment of the Commission regarding plaintiff's right knee claim. *Page 10 
Rule 41(b), North Carolina Rules of Civil Procedure. Plaintiff's is barred from re-litigating her right knee claim at this juncture.
5. Defendants are entitled to a credit for any indemnity compensation paid to plaintiff since June 3, 2002, the date the parties entered into a mediated settlement agreement. N.C. Gen. Stat. § 97-42. In addition, defendants are entitled to a credit for the amount of over compensation paid to the plaintiff prior to October 18, 2004, the date of hearing before the Deputy Commissioner, as a result of the incorrect average weekly wage. Id.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. The June 3, 2002 Mediated Settlement Agreement of the parties in this matter is hereby APPROVED by the Commission as a binding compromise settlement agreement, and shall be enforced pursuant to the provisions of the Workers' Compensation Act.
2. Defendants are entitled to a credit for any indemnity compensation paid to plaintiff since June 3, 2002, the date the parties entered into a mediated settlement agreement. In addition, defendants are entitled to a credit for the amount of over compensation paid to the plaintiff prior to October 18, 2004, the date of hearing before the Deputy Commissioner, as a result of the incorrect average weekly wage.
3. Each side shall pay their respective costs in this matter.
 This 31st day of January 2007. *Page 11 
S/___________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________________ DIANNE C. SELLERS COMMISSIONER