* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which *Page 2 
were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On September 29, 2003, the date of the alleged injuries giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On September 29, 2003, an employment relationship existed between plaintiff and defendant-employer.
3. At times relevant for this claim, defendant-employer was duly insured under a policy of workers' compensation insurance by Liberty Mutual, the properly designated carrier for purposes of this claim.
4. The North Carolina Industrial Commission has jurisdiction over the parties in this matter. 5. For purposes of this claim, plaintiff's average weekly wage is $443.03 yielding a compensation rate of $295.37 per week.
6. Plaintiff is presently receiving workers' compensation benefits from defendants at a compensation rate of $295.37 and all indemnity benefits are current.
7. The following were marked and received into evidence at the Deputy Commissioner's hearing as:
 a. Stipulated Exhibit Number 1, Pre-Trial Agreement
 b. Stipulated Exhibit Number 2, Mediated Settlement Agreement
 c. Stipulated Exhibit Number 3, Industrial Commission Forms and Pleadings
 d. Stipulated Exhibit Number 4, Medical Records *Page 3 
 e. Stipulated Exhibit Number 5, Proposed Compromise Settlement Agreement, which was subsequently stipulated into the record by the parties after being initially marked as plaintiff's Exhibit Number 1.
8. The issues before the Full Commission are whether plaintiff has entered into an enforceable Mediated Settlement Agreement and settled her workers' compensation claim; and, if so, should plaintiff be ordered to enter into a Compromise Settlement Agreement and/or should an Order be issued releasing defendants from further liability based upon the signed Mediated Settlement Agreement; and, whether defendants are entitled to any credits for benefits paid after June 21, 2005 or at such date plaintiff indicated her intent not to go forward with the settlement.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On or about September 29, 2003, plaintiff contracted the occupational disease of bilateral carpal tunnel syndrome arising out of and in the course of her employment with defendant-employer. Defendants accepted plaintiff's claim as compensable and have paid both indemnity and medical benefits for the same.
2. Plaintiff is a college graduate with a bachelor's degree in criminal justice from St. Augustine's College. After graduation, plaintiff worked with Nortel in security communications for five years. In February 2000, plaintiff began employment with the Durham Housing Authority in an administrative capacity as a work control specialist.
3. From September 2003 until approximately January 2005, plaintiff handled her *Page 4 
workers' compensation claim without the assistance of legal counsel. In January 2005, plaintiff retained Matthew Harbin at The Law Offices of James Scott Farrin to represent her interests.
4. In January 2005, plaintiff was initially released with work restrictions. Defendant-employer, however, was unable to accommodate plaintiff's work restrictions, which resulted in a termination of the employment relationship. Plaintiff requested and received vocational rehabilitation services provided by defendants.
5. In the spring of 2005, Dr. Theodore M. Pitts released plaintiff at maximum medical improvement and assigned permanent work restrictions. As vocational services were initiated, defendants retained legal counsel to attempt to resolve the claim by a compromise settlement agreement. The parties voluntarily agreed to meet for a mediated settlement conference to discuss settlement of the claim.
6. Terry Kilbride was selected as the mediator and a mediated settlement conference was scheduled for June 21, 2005. Prior to the scheduled mediation, Mr. Harbin and other attorneys at his firm discussed the mediation process with plaintiff and secured her authority to forward a settlement demand to defendants.
7. During the scheduling of the mediation, plaintiff was still under the care of Dr. Pitts. On May 24, 2005, Dr. Pitts revised plaintiff's work restrictions and limited her to four hours of work per day. At this time, Dr. Pitts also assigned plaintiff a ten percent permanent partial disability rating to each hand. Plaintiff and her counsel were fully aware of her revised work restrictions at the time of the scheduled mediation on June 21, 2005.
8. On June 21, 2005, all parties met as scheduled for the mediated settlement conference. Plaintiff was present and represented by Mr. Harbin with The Law Offices of James Scott Farrin. Counsel engaged in extensive negotiations at the mediation. Plaintiff and *Page 5 
Mr. Harbin also engaged in conversations and discussed her various options under the Workers' Compensation Act. Following the negotiations, the parties verbally agreed to a full and final settlement of all issues related to plaintiff's workers' compensation claim. The agreement between the parties was memorialized in writing and executed by plaintiff and counsel for both parties.
9. Pursuant to the Mediated Settlement Agreement, defendants would make one lump sum payment to plaintiff in the amount of $37,000.00. Pursuant to the agreement, "In consideration therefor, (sic) the parties shall execute all necessary forms and/or a Compromise Settlement Agreement in compliance with N.C. Gen. Stat. § 97-17." Defendants agreed to pay the mediator's fee if plaintiff met certain conditions. Defendants agreed to pay all authorized related medical expenses, including a specific outstanding bill, and defendants agreed to continue temporary total disability payments until approval of the compromise settlement agreement by the Industrial Commission. On June 23, 2005, Mr. Kilbride submitted a Report of Mediator indicating that the parties reached an agreement on all issues.
10. Soon after the mediation, but prior to the parties finalizing a formal agreement, plaintiff withdrew her consent to the Mediated Settlement Agreement. Subsequently, the Law Offices of James Scott Farrin moved to withdraw as counsel of record for plaintiff and requested the approval of a reasonable attorney's fee at the time of any settlement or issuance of an award by the Industrial Commission. On August 10, 2005, Executive Secretary Tracey H. Weaver entered an Order allowing the Law Offices of James Scott Farrin to withdraw as counsel of record with the issue of attorney's fees to be considered at the time of settlement of the claim or the issuance of an award by the Industrial Commission.
10. Plaintiff testified that her primary disagreement with the Mediated Settlement *Page 6 
Agreement is the amount of money that she is to receive under the terms of the agreement. After having an opportunity to think about the terms of the agreement, conferring with friends, and doing research on her own, plaintiff reported that she did not want to proceed with the settlement. Plaintiff further testified that she believed her weekly benefits would cease if she failed to sign the agreement.
11. Testifying under subpoena and after plaintiff consented in open court to his limited testimony regarding the circumstances giving rise to the agreement, Mr. Harbin, plaintiff's former counsel of record, testified that he thoroughly advised plaintiff about her rights under the Workers' Compensation Act, about the mediation process, and about the terms of the Mediated Settlement Agreement. Following the conference, Mr. Harbin forwarded defendants social security offset language and other terms to be included in the compromise settlement agreement. Mr. Harbin refuted any testimony that he instructed plaintiff that her weekly indemnity benefits would be cut off if she failed to enter into the agreement.
12. By the written terms of the agreement, plaintiff was aware of the final terms of the settlement. By executing the agreement of her own free will, plaintiff consented to the terms of the agreement including the amount of the settlement, the payment of outstanding medical expenses, and that the agreement `is fair and in the best interest of the parties and consent to the Industrial Commission reviewing this CSA and entering an order approving it based on above terms and conditions." The Commission finds that the agreement entered into by plaintiff with defendants was not the result of fraud, misrepresentation, undue influence, or mutual mistake.
13. Subsequent to the June 21, 2005 mediation, plaintiff had a vocational assessment prepared by a certified vocational evaluator, Patrick Clifford. After reviewing the vocational assessment and other additional evidence submitted by plaintiff, the Commission finds that this *Page 7 
evidence does not support setting aside the agreement on the basis that the agreement was not fair and just and in the best interests of all parties involved in the claim.
14. Plaintiff, of her own free will, entered into an agreement with defendants in which she would receive $37,000.00 in settlement of her workers' compensation claim.
15. The Agreement of Final Settlement and Released tendered as a Stipulated Exhibit in the Deputy Commissioner's hearing contained all the terms of the agreement of the parties as indicated in the Mediated Settlement Agreement and met all the requirements of Rule 502 of the North Carolina Workers' Compensation Rules. A review of the medical evidence submitted with the Agreement for Final Compromise Settlement and Release that was available at the time of Mediated Settlement Conference, and the medical and other competent evidence before the Commission, reveals that the agreement was fair and just at the time it was entered into by the parties on June 21, 2005, and it is reasonable to conclude that plaintiff willingly entered into the agreement to obtain the benefit of immediate payment.
16. At all relevant times, defendants were and remain ready to comply with the terms of the agreement reached on June 21, 2005. Pursuant to the agreement, defendants have continued to pay plaintiff temporary total disability benefits.
17. Defendants are not entitled to a credit for temporary total disability benefits paid to plaintiff after entering into the June 21, 2005 Mediated Settlement Agreement.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Court of Appeals has held that a written memorandum of *Page 8 
mediated settlement is a valid compromise settlement agreement subject to the approval of the Industrial Commission. Lemly v. Colvard OilCompany, 157 N.C. App. 99, 104, 577 S.E.2d 712, 716 (2003). Once submitted, the Industrial Commission must determine the agreement to be fair and just and in the best interest of all parties in order to approve the settlement agreement. N.C. Gen. Stat. § 97-17; Rule 502(1) of the North Carolina Workers' Compensation Rules.
2. In the case at bar, the Mediated Settlement Agreement entered into by plaintiff and defendants was an enforceable agreement. Lemly v.Colvard Oil Company, supra.
3. The agreement is reasonable, fair, just, and in the best interest of all parties and is HEREBY APPROVED in the amount of $37,000.00. N.C. Gen. Stat. § 97-17; Rule 502(1) of the North Carolina Workers' Compensation Rules.
4. Following the June 21, 2005 Mediated Settlement Agreement, defendants continued to pay plaintiff temporary total disability benefits up to the date of the hearing before the Deputy Commissioner pursuant to the terms of the agreement. Defendants shall not receive a credit for those temporary total disability benefits paid after entering the June 21, 2005 Mediated Settlement Agreement. N.C. Gen. Stat. § 97-42.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. IT IS HEREBY ORDERED that the June 21, 2005 Mediated Settlement Agreement is HEREBY APPROVED in the amount of $37,000.00. Compliance with the terms of the agreement shall discharge defendants from further liability under the Workers' Compensation Act by reason of the injuries giving rise to this claim. This Order does not purport *Page 9 
to approve, resolve or address any issue or matter over which the Industrial Commission has no jurisdiction, whether or not such issue or matter is referred to in the June 21, 2005 agreement executed by the parties.
2. A reasonable attorney's fee of 25% of the amount paid plaintiff pursuant to the agreement is HEREBY APPROVED to be deducted from sums due plaintiff and shall be paid to plaintiff's current counsel of record, Robert T. Perry. Said attorney's fee is subject to the attorney's fee lien of plaintiff's former counsel of record, The Law Offices of James Scott Farrin. Plaintiff's former counsel of record may pursue a claim for his attorney's fee in the appropriate forum.
3. Defendants shall pay the costs.
This 24th day of May, 2007.
 S/________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/________________ DANNY LEE MCDONALD COMMISSIONER.
S/________________ CHRISTOPHER SCOTT COMMISSIONER. *Page 1