* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. The employer-employee relationship existed between the named employee and named employer on or about February 17, 2002, the date of the admitted compensable injury.
3. The carrier liable on the risk is Specialty Risk Services.
4. The parties stipulate that employee's average weekly wage as of February 17, 2002 was $430.32, which results in a compensation rate of $286.89.
5. The parties agree that the injury arose out of and within the course and scope of employee's employment and is compensable.
 * * * * * * * * * * *
The following documents were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement for June 28, 2005 hearing;
2. Stipulated Exhibit Number 2, Medical Records;
3. Stipulated Exhibit Number 3, Industrial Commission Forms and Filings; and
4. Stipulated Exhibit Number 4, Pre-Trial Agreement, Medical Records submitted at November 21, 2005 hearing
 * * * * * * * * * * *
The following were received into evidence by the Deputy Commissioner as:
 DEPOSITIONS
1. Oral deposition of Kevin Speer, M.D., taken on April 4, 2006;
2. Oral deposition of Yvonne T. Sherman, taken on April 7, 2006;
3. Oral deposition of Gary L. Smoot, M.D., taken on April 11, 2006, with Plaintiff's Exhibits numbered 1 to 7 attached to the deposition transcript; *Page 3 
4. Oral deposition of Edwin Hoeper, M.D., taken on May 25, 2005 with Plaintiff's Exhibits numbered 1 to 3 attached to the deposition transcript; and,
5. Oral deposition of Richard Dobson, M.D., taken on June 2, 2006.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On December 18, 1998, the plaintiff was employed as a group leader for the defendant-employer. On that date, the plaintiff injured his left knee while lifting a steel beam. Defendants accepted liability for this claim, which is Industrial Commission file number 916514.
2. As a result of his compensable left knee injury, the plaintiff underwent two arthroscopic surgeries of the left knee. Pursuant to a Form 21 Agreement, the defendants paid plaintiff for a twenty percent (20%) permanent partial impairment rating to the left knee on August 20, 2001. The plaintiff was released to return to work with a 55-pound maximum lifting restriction.
3. On February 17, 2002, the plaintiff sustained a second injury while employed as a group leader for the defendant-employer. The plaintiff fell from a ladder injuring his back and neck. The defendants also accepted liability for this claim and authorized the plaintiff to seek medical treatment. This injury is the subject of Industrial Commission file number 217514.
4. Dr. Kevin Speer, an orthopaedic surgeon, diagnosed the plaintiff with a lumbar and cervical strain and contusion. Because the plaintiff's back and neck were not improving with conservative treatment, Dr. Speer referred the plaintiff to Dr. Gary L. Smoot for epidural steroid injections. *Page 4 
5. Dr. Smoot recommended repeating the Steroid Dose Pak and revisiting physical therapy with a new therapist, and gave the plaintiff a prescription for pain relief. The plaintiff reported his symptoms were not improving with either the medications or physical therapy. On August 1, 2002, Dr. Smoot felt that there was no other reasonable medical intervention that he could provide to relieve the plaintiff's continued pain. As a result, Dr. Smoot released the plaintiff from his care and referred him for a functional capacity evaluation to determine his work status. Dr. Smoot assigned the plaintiff a 0% permanent partial impairment rating to the spine.
6. On August 8, 2002, the plaintiff underwent a functional capacity evaluation (FCE), which confirmed that he is capable of performing work at a medium physical demand category. Subsequently, the defendants submitted a job description for a position as a "team leader" to Dr. Smoot. Upon review, Dr. Smoot modified the provision, which would require the plaintiff to move objects up to 200 pounds, to read "50 pounds per FCE." Following the February 21, 2003 mediation, the plaintiff did not return to work in the team leader position or any other position with the defendant-employer.
7. On January 15, 2003, Dr. Richard C. Dobson evaluated the plaintiff for continued complaints of pain in the back and neck. Dr. Dobson did not have the plaintiff's medical records and relied on the medical history provided by the plaintiff during his examination. Dr. Dobson prescribed medication, ordered updated x-rays and an MRI scan and recommended the plaintiff return for further treatment.
8. After his initial visit with Dr. Dobson, the plaintiff sought treatment with several medical providers for his neck and back including his family physician, Dr. Regina Ryan, the Veterans Affairs Medical Center in Durham, and Dr. Samuel K. St. Clair, a neurologist. *Page 5 
9. On September 10, 2003, the plaintiff returned to Dr. Dobson for follow-up and an electrodiagnostic study. The plaintiff still did not provide Dr. Dobson with his medical records from his prior medical treatment for his neck and back injuries. After reviewing the MRI results from a previous scan, Dr. Dobson diagnosed the plaintiff with cervical and lumbar disc injuries and determined that none of the studies indicated the need for surgical intervention. Based on his diagnosis and the plaintiff's subjective complaints of ongoing pain, Dr. Dobson testified that due to his compensable injury of February 17, 2002, the plaintiff was totally disabled from all gainful employment.
10. At the referral of Dr. Ryan, the plaintiff treated with Dr. Erhan C. Atasoy for pain management. Dr. Ryan also referred the plaintiff to Dr. Edwin W. Hoeper for psychiatric treatment. Dr. Hoeper continued to treat the plaintiff for his mental conditions through June 10, 2005.
11. The parties participated in a mediated settlement conference on February 21, 2003. The plaintiff was accompanied by his wife and represented by his prior counsel, Attorney Bob Lucas. At the mediation, the parties settled both claims for $25,000.00, and the plaintiff signed the mediated settlement agreement. The plaintiff's wife testified that there was nothing wrong with the plaintiff's mind on the day of the mediation, and stated: "His mind was very clear that day." She further testified that the plaintiff was capable of making his own decisions and of making himself heard. The plaintiff testified that he understood that once the Industrial Commission approved the agreement, he would get a final check from the defendants, less the attorney's fee, and that his claim would be closed.
12. After a careful review of the competent evidence of record, the Full Commission finds that the February 21, 2003 mediated settlement agreement is fair and just and in the best *Page 6 
interests of all parties and should be enforced. As such, the Agreement is in accord with the intent and purpose of the Workers' Compensation Act because the plaintiff will receive correct, fair, and just disability benefits.
13. Upon review of all medical records, lay testimony, medical expert testimony from Drs. Smoot, Speer, Dobson and Hoeper, and all other evidence submitted to the Commission, the Full Commission finds that there is insufficient evidence upon which to find that the defendants made any type of misrepresentation to the plaintiff, or placed any undue influence on the plaintiff in an attempt to force him into signing the settlement agreement in the amount of $25,000.00.
14. There is insufficient evidence upon which to find that a mutual mistake of fact existed between the parties at the time the settlement agreement was entered into, as both parties were aware that the plaintiff had been examined by Dr. Dobson, and that Dr. Dobson had recommended additional testing and treatment.
15. The Full Commission finds that the greater weight of the evidence shows that a meeting of the minds was reached on all material terms of the contract and, thus, the mediated settlement agreement entered into by parties is enforceable.
16. The defendants have represented that the Commission has been supplied with copies of all vocational, medical, and nursing rehabilitation reports, opinions, and information relative to the plaintiff's medical treatment, and that these medical records constitute a full and complete medical report as required by N.C. Gen. Stat. §97-82 and Industrial Commission Rule 502. Upon review of these medical records, the Full Commission finds that the mediated settlement agreement entered into by parties was fair and just.
17. Although the mediated settlement agreement entered into by parties does not explicitly state which party is to be responsible for medical expenses, that omission does not *Page 7 
invalidate the agreement. The defendants have admitted both of the plaintiff's claims and have paid for all known, authorized medical expenses related to these compensable injuries. Furthermore, there is no evidence that there are any unpaid medical expenses related to these two claims.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The North Carolina Court of Appeals has held that a written memorandum of mediated settlement is a valid compromise settlement agreement subject to the approval of the Industrial Commission.Lemly v. Colvard Oil Company, 157 N.C. App. 99, 104, 577 S.E.2d 712, 716
(2003). Under Lemly v. Colvard Oil Company, supra, the Mediated Settlement Agreement entered into in the present case was an enforceable agreement. Id.
2. Once submitted, the Industrial Commission must determine the agreement to be fair and just and in the best interest of all parties in order to approve the settlement agreement. N.C. Gen. Stat. § 97-17; Rule 502(1) of the North Carolina Workers' Compensation Rules. The Full Commission concludes that the Mediated Settlement Agreement entered into by the parties in this matter is reasonable, fair, just, and in the best interest of all parties. N.C. Gen. Stat. § 97-17; Rule 502(1) of the North Carolina Workers' Compensation Rules.
 * * * * * * * * * * * *Page 8 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. IT IS HEREBY ORDERED that the February 21, 2003 Mediated Settlement Agreement in this matter is APPROVED in the amount of $25,000.00 and settles all claims that Plaintiff may have pertaining to the injuries referenced herein. Said claims include, but are not limited to, claims for present and future temporary total disability compensation, temporary partial disability compensation, permanent partial disability compensation, and future medical expenses for the injury. Compliance with the terms of the agreement shall discharge the defendants from further liability under the Workers' Compensation Act by reason of the injuries giving rise to this claim. This Order does not purport to approve, resolve or address any issue or matter over which the Industrial Commission has no jurisdiction, whether or not such issue or matter is referred to in the February 21, 2003 agreement executed by the parties.
2. A reasonable attorney's fee of twenty five percent (25%) of the amount paid pursuant to the agreement is hereby approved to be deducted from sums due the plaintiff and shall be paid directly to the plaintiff's current counsel of record, Brantley, Jenkins, Riddle, Hardee Hardee, L.L.P. Said attorney's fee is subject to the attorney's fee lien of the plaintiff's former counsel of record, Robert Lucas. Plaintiff's former counsel of record may pursue a claim for his attorney's fee in the appropriate forum.
3. The defendants shall pay the costs.
This 16th day of July 2007. *Page 9 
 S/______________________
 CHRISTOPHER SCOTT
 COMMISSIONER
CONCURRING:
 S/______________________ DIANNE C. SELLERS COMMISSIONER
 S/______________________ PAMELA T. YOUNG COMMISSIONER. *Page 1