*********** *Page 2 
Upon review of the competent evidence of record and the briefs and oral arguments of the parties, with reference to the errors assigned, and upon consideration of the evidence from the hearing before Deputy Commissioner Baddour, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. Plaintiff alleges that he sustained a compensable work injury on or about November 22, 2002 as a result of a motor vehicle accident.
2. Defendants denied and continue to deny the compensability of Plaintiff's workers' compensation claim on the basis that Plaintiff was an independent contractor at the time of his alleged work injury and was not an employee of Defendant-Employer.
3. Defendants do not stipulate that the parties are properly before the North Carolina Industrial Commission, or that the parties are subject to and bound by the North Carolina Workers' Compensation Act, as they contend Plaintiff was an independent contractor as their basis for denying this claim.
4. On November 30, 2004, the parties participated in a mediated settlement conference.
5. On November 30, 2004, the parties executed a Mediated Settlement Agreement in which Plaintiff agreed to accept $15,000.00 for full and final settlement of his workers' compensation claim, and Defendants agreed to pay the entire mediator's fee as well as unpaid *Page 3 
medical expenses up to $355.00. Defendants also agreed to advance Plaintiff $2,500.00 of the $15,000.00 upon Plaintiff's execution of the Mediated Settlement Agreement.
6. Following the November 30, 2004 mediated settlement conference, the parties executed an Agreement for Final Compromise Settlement and Release.
7. On December 10, 2004, Defendants submitted the executed Agreement for Final Compromise Settlement and Release for approval to Executive Secretary Tracey H. Weaver.
8. On December 22, 2004, the North Carolina Industrial Commission issued an Order approving the Agreement for Final Compromise Settlement and Release.
9. Following the approval of the Agreement for Final Compromise Settlement and Release, Defendants paid all sums of money to Plaintiff required by the Agreement.
10. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: A package of stipulated documents, including:
 i. North Carolina Industrial Commission forms and filings;
 ii. Mediated Settlement Agreement dated November 30, 2004;
 iii. Various correspondence;
 iv. Agreement for Final Compromise Settlement and Release dated November 30, 2004;
 v. Defendants' payment history and cancelled checks;
 b. Stipulated Exhibit Two: Plaintiff's responses to Defendants' First Set of Interrogatories;
 c. Stipulated Exhibit Three: Plaintiff's responses to Defendants' Supplemental Interrogatories; *Page 4 
 d. Plaintiff's Exhibit One: Plaintiff's medical records.
 ***********
The issues to be determined are:
1. Whether Plaintiff's workers' compensation claim should be dismissed with prejudice due to his failure to reopen his workers' compensation claim until over three years after the issuance of the Order approving settlement of his claim?
2. Whether Plaintiff should be allowed to reopen his workers' compensation claim even though he agreed to settle his claim and accept a lump sum settlement approved by the North Carolina Industrial Commission?
3. Whether Plaintiff's claim for further workers' compensation benefits is barred by accord and satisfaction?
4. Whether the Agreement for Final Compromise Settlement and Release should be set aside?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 50 years old, with a date of birth of October 30, 1959. Plaintiff completed the eighth grade. Plaintiff's reading, arithmetic, and spelling proficiency is at a fourth grade level. Defendant-Employer hired Plaintiff to work as a truck driver; however, the evidence of record is unclear as to whether Plaintiff was an independent contractor or an employee of Defendant-Employer. *Page 5 
2. On November 22, 2002, Plaintiff was driving a truck hauling trees for Defendant-Employer when his brakes failed and he could not stop to avoid hitting a car making a left turn, causing him to swerve and run into a ditch to avoid hitting other vehicles on the road. Plaintiff sustained permanent injuries to his face and eye, a neck injury requiring surgery, a right knee injury, and a right lower lip injury. In addition, Plaintiff began to experience severe and constant headaches, blurred vision, fainting spells, and generalized aches and pains following his November 22, 2002 work injury.
3. On December 2, 2003, Plaintiff filed a Form 18 on which he claimed injuries to his head, right side of his face, forehead, eye, both arms, lower back, and hip as a result of his November 22, 2002 work injury. On February 9, 2004, Plaintiff filed a Form 33 request for a hearing. On May 25, 2004, Defendants filed a Form 61 denying the compensability of Plaintiff's workers' compensation claim on the ground that Plaintiff was an independent contractor of Defendant-Employer at the time of his injury and not an employee. However, Defendant-Employer did give Plaintiff a $2,500.00 salary or payment advance sometime after his November 22, 2002 work injury.
4. Plaintiff testified that he underwent an inpatient admission to a psychiatric hospital near his home in Virginia, which apparently occurred at some point before or after his November 22, 2002 work injury. However, it is unclear from the record as to what specific circumstances prompted Plaintiff's inpatient psychiatric hospital admission. Plaintiff testified concerning an episode in which he tried to shoot his wife (now ex-wife), Ms. Yvette Whitfield, with a gun. Although Plaintiff alluded to this event as being what precipitated his inpatient psychiatric hospital admission, he did not specifically state that this incident led to his psychiatric hospital admission or when his admission occurred. *Page 6 
5. A March 7, 2004 neuropsychological evaluation also mentions an episode in which Plaintiff pulled a gun on Ms. Whitfield, but does not directly associate this incident with the inpatient psychiatric hospital admission, which it also documents. Plaintiff admitted that he could not recall the specific dates or even month when he underwent this inpatient psychiatric hospital admission. Plaintiff was given an opportunity to present records from this hospital admission when the Full Commission remanded this case to the Deputy Commissioner level for an evidentiary hearing, but he failed to do so.
6. Plaintiff hired Mr. Benjamin T. Cochran as his counsel to represent him in connection with his workers' compensation claim approximately two years after his November 22, 2002 work injury. Plaintiff was not working when he hired Mr. Cochran, and had not been working since his November 22, 2002 work injury. Eventually, Defendant-Employer terminated its work relationship with Plaintiff due to his inability to perform his work duties following his November 22, 2002 work injury. Plaintiff did not understand that Defendants had denied his workers' compensation claim until Mr. Cochran explained this to him.
7. On November 30, 2004, the parties participated in a mediated settlement conference. At the mediation, Plaintiff agreed to settle his workers' compensation claim and subsequently executed an Agreement for Final Compromise Settlement and Release and received a lump sum payment. Plaintiff is seeking to set aside the Agreement for Final Compromise Settlement and Release.
8. At the mediated settlement conference, Mr. Cochran's partner, Mr. Kenneth L. Hardison, represented Plaintiff instead of Mr. Cochran. Mr. Hardison has been practicing law for over 25 years, and devoted approximately 80 percent of his professional time to the practice of workers' compensation law from 1998 to 2004. *Page 7 
9. Mr. Hardison has no independent recollection of the November 30, 2004 mediated settlement conference. However, Mr. Hardison stated that pursuant to his habit and practice with respect to how he handles workers' compensation claims, he would have met with Plaintiff prior to the mediated settlement conference to explain how the mediation process works, to offer advice and strategy as to how to proceed in the negotiation process, and to answer any questions or address any concerns. Mr. Hardison also generally advises his clients that if they sign a settlement agreement, then the case is over, regardless of what happens in the future, and there will be no future compensation. According to Mr. Hardison, he would not have gone through with the mediation if he thought that Plaintiff was not mentally competent and unable to understand the proceedings. In addition, Mr. Hardison explained that he would not get involved in coercing a client to sign a settlement agreement, or in either forcing or allowing a spouse of a client to coerce the client into signing a settlement agreement against the client's will.
10. Ms. Whitfield accompanied Plaintiff to the November 30, 2004 mediated settlement conference, and sat in on both the open session with all parties and the closed session with Plaintiff and Mr. Hardison. Although Ms. Whitfield handled all of the family financial issues at that time, she did not have a power of attorney to formally handle Plaintiff's financial affairs or make decisions on his behalf.
11. According to Plaintiff, Ms. Whitfield pressured him to accept Defendants' offer to settle his workers' compensation claim for $15,000.00, but he wanted to hold out for more money. Plaintiff was of the opinion that Mr. Hardison talked Ms. Whitfield into accepting the $15,000.00 offer and she, in turn, put pressure on him to accept the offer.
12. Plaintiff further testified that during the mediated settlement conference, he developed a headache, for which he took some type of pain medication. Plaintiff could not recall *Page 8 
what type of pain medication he took, or the names or quantity of any other medication he took on that day prior to his arrival. Plaintiff appeared to be raising an issue of whether he was mentally competent to participate in the November 30, 2004 mediated settlement conference; therefore, the Full Commission allowed him to present further evidence on this issue and on the other grounds he raised in support of his motion to set aside the settlement agreement at an evidentiary hearing.
13. Once Plaintiff accepted Defendants' offer to settle his workers' compensation claim for $15,000.00 at the November 30, 2004 mediated settlement conference, the parties executed a Mediated Settlement Agreement, and afterward, Defendants prepared an Agreement for Final Compromise Settlement and Release which Plaintiff, his counsel, and Defendants' counsel executed. Plaintiff drove alone from his home in Virginia to Raleigh, North Carolina to meet with Mr. Hardison and sign the Agreement for Final Compromise Settlement and Release. According to Plaintiff, Mr. Hardison's legal assistant sat down with him and read the Agreement for Final Compromise Settlement and Release to him in its entirety, and answered any questions that he had prior to his execution of it.
14. On December 22, 2004, the Office of the Executive Secretary issued an Order approving the Compromise Settlement Agreement. Thereafter, Defendants issued checks to Plaintiff and Plaintiff's Counsel pursuant to the terms of the December 22, 2004 Order Approving Compromise Settlement Agreement.
15. On September 29, 2008, Plaintiff, now appearing pro se, filed a Form 33 seeking to reopen his claim, and Defendants responded by filing a Form 33R, stating that Plaintiff is not entitled to any additional workers' compensation benefits pursuant to the December 22, *Page 9 
2004 Order of Executive Secretary Weaver approving the Agreement for Final Compromise Settlement and Release executed by both parties and their counsel.
16. On December 2, 2008, Defendants filed a Motion to Dismiss Plaintiff's claim with prejudice. Deputy Commissioner Bradley W. Houser granted Defendants' Motion prior to the date scheduled for the hearing of this matter, without taking any evidence.
17. At the hearing before Deputy Commissioner Philip A. Baddour, conducted pursuant to the July 6, 2009 Full Commission remand for an evidentiary hearing, Plaintiff contended that his counsel did not adequately represent him during the mediated settlement conference, and that he was mentally incompetent to enter into either the Mediated Settlement Agreement or the Agreement for Final Compromise Settlement and Release at the time that he executed those documents. Plaintiff also contends that all of the relevant medical records did not get admitted into evidence or considered.
18. With respect to the medical records, Plaintiff contends that a note from one of his treating physicians stated that he was unable to work, but his counsel failed to bring this to the attention of Defendants during the mediated settlement conference. However, the parties included the March 7, 2004 neuropsychological evaluation in the package of medical records submitted to the Industrial Commission along with the Agreement for Final Compromise Settlement and Release, and this neuropsychological evaluation referenced Plaintiff's inability to work. In addition, Plaintiff cites his inpatient psychiatric hospital admission as evidence of his mental incapacity. Plaintiff's inpatient psychiatric hospital admission is noted in the March 7, 2004 neuropsychological evaluation, but the Full Commission is unable to determine from the evidence if it occurred before or after Plaintiff's November 22, 2002 work injury, or whether it *Page 10 
even occurred at all. Plaintiff had the opportunity, upon the reopening of the record, to submit these medical records.
19. The March 7, 2004 neuropsychological evaluation listed Plaintiff's diagnoses as post-concussion syndrome, organic personality disorder, dysthymic disorder, as well as anxiety state, unspecified, and noted that Plaintiff's "[c]urrent deficits in cognitive functions . . . are significant, and almost certainly represent residual deficits from his motor vehicle accident."
20. At the hearing before Deputy Commissioner Baddour, Plaintiff testified, and the Full Commission so finds that Mr. Hardison explained the mediation process to him; that he understood, in general terms, the purpose of the mediation and how the negotiation process works; and that he actively participated in the mediation process, including the financial negotiations. The Full Commission further finds that Plaintiff signed the Agreement for Final Compromise Settlement and Release of his own free will, and that Plaintiff understood that by signing the Agreement he would receive no further compensation in connection with his November 22, 2002 work injury beyond the $15,000.00.
21. The Full Commission finds, based upon the greater weight of the evidence, that there is insufficient evidence in the record to support a finding that Plaintiff lacked the mental capacity to participate in the November 30, 2004 mediated settlement conference, or to adequately understand the consequences of executing either the Mediated Settlement Agreement or the Agreement for Final Compromise Settlement and Release. The Full Commission further finds that there is insufficient evidence in the record to support a finding that Ms. Whitfield or Mr. Hardison coerced Plaintiff into executing either the Mediated Settlement Agreement or the Agreement for Final Compromise Settlement and Release. *Page 11 
22. The Full Commission finds, based upon the greater weight of the evidence, that the Mediated Settlement Agreement is enforceable and the Agreement for Final Compromise Settlement and Release is fair and just. It appears from the evidence that there was a genuine issue of whether Plaintiff was an independent contractor for Defendant-Employer rather than an employee, which could have defeated his workers' compensation claim. The Industrial Commission reviewed all medical records known to exist at the time the settlement agreement was submitted.
18. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff failed to prove grounds for setting aside the Agreement for Final Compromise Settlement and Release.
19. With respect to Defendants' Motion to Dismiss, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff timely moved to set aside the Agreement for Final Compromise Settlement and Release. However, even if Plaintiff's Motion was untimely, the Full Commission further finds that Defendants failed to prove that sanctions short of dismissal would have been inappropriate.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In determining whether a mediated settlement agreement is enforceable, the Commission should look to see whether: (1) there is a mediated settlement agreement signed by all parties; (2) the mediated settlement agreement contains all requirements of a valid contract; (3) there was a meeting of the minds; (4) the contract complies with Rule 502; and (5) the *Page 12 
agreement is fair and just and in the best interest of all parties.Lemly v. Colvard Oil Co., l57 N.C. App. 99, 577 S.E.2d 712 (2003). Plaintiff entered into a binding and enforceable Mediated Settlement Agreement. It was signed by all the parties, there was a meeting of the minds, and it contained all the requirements of a valid contract. Plaintiff failed to prove that he lacked the mental capacity to participate in the November 30, 2004 mediated settlement conference, or to adequately understand the consequences of executing the Mediated Settlement Agreement.
2. Plaintiff failed to meet his burden of proving that his now ex-wife, Ms. Yvette Whitfield or Mr. Kenneth L. Hardison, Plaintiff's counsel at the November 30, 2004 mediated settlement conference, coerced him into executing either the Mediated Settlement Agreement or the Agreement for Final Compromise Settlement and Release. N.C. Gen. Stat. § 97-17 (2009).
3. Plaintiff failed to prove that the parties entered into the Agreement for Final Compromise Settlement and Release based upon fraud, misrepresentation, undue influence, or mutual mistake. N.C. Gen. Stat. § 97-17 (2009).
4. Plaintiff failed to meet his burden of proving that the Office of the Executive Secretary approved the December 22, 2004 Agreement for Final Compromise Settlement and Release without undertaking a full investigation to determine if the settlement agreement was fair and just, as required by N.C. Gen. Stat. §§ 97-17 and 97-82. In this case, Defendants denied Plaintiff's claim on the ground that he was an independent contractor, not an employee and there is no evidence in this record to refute Defendants' defense, which, if valid, would defeat Plaintiff's claim. The Full Commission concludes that the Agreement for Final Compromise Settlement and Release was fair and just and should not be set aside. Lemly v. Colvard Oil Co., l57 N.C. App. 99, 577 S.E.2d 712 (2003).
5. Defendants' Motion to Dismiss Plaintiff's claim should be denied. *Page 13 
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's Motion to Set Aside the Agreement for Final Compromise Settlement and Release is DENIED.
2. Defendants' Motion to Dismiss is DENIED.
3. Each side shall bear its own costs.
This the ___ day of July 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1