WILLIAM E. NORTHINGTON and NORTHINGTON REALTY COMPANY, Plaintiffs
JOHN MICHELOTTI and ADVANTAGE REAL ESTATE, INC., Defendants

No. COA95-79

(Filed 19 December 1995)

**Contracts § 11 (NCI4th)— handwritten document signed by parties—contract or agreement to agree—genuine issue of fact—summary judgment improper**

In an action for breach of contract concerning the ownership and operation of real estate franchises, the trial court erred in granting summary judgment for plaintiffs where a genuine issue existed as to whether a document handwritten by plaintiff and signed by plaintiff and defendant reflected a "meeting of the minds" between the parties as to all essential terms of their agreement or whether it merely amounted to an understanding or an "agreement to agree."

**Am Jur 2d, Contracts §§ 26, 35.**

Appeal by defendants from order entered 19 October 1994 by Judge Lester P. Martin, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 24 October 1995.

*White and Crumpler, by Dudley A. Witt, for plaintiffs-appellees.*

*Jacobson & Beavers, by Kenneth R. Jacobson and Robert E. Boydoh, Jr., for defendants-appellants.*

WALKER, Judge.

Plaintiff Northington Realty Company (Northington Realty) is a Winston-Salem corporation owned by plaintiff William E. Northington (Northington) and his wife. In April, 1993, the corporation was operating as a Century 21 real estate franchise. Defendant John Michelotti

(Michelotti) was the sales manager and broker-in-charge of Northington Realty until his resignation on 19 April 1993. Michelotti stayed on at Northington Realty as an independent contractor/sales agent through the end of the month.

In May 1993, Michelotti sought to purchase an existing Century 21 franchise, but Northington opposed such a purchase. On 20 May 1993, following negotiations regarding future business dealings, Northington and Michelotti signed a document prepared by Northington in his own handwriting. The document read as follows: This Agreement of Understanding entered into by Mr. John N. Michelotti and Mr. William E. Northington documents an agreement that they have entered into. The agreement is as follows:

1) Michelotti and his wife are operating a Century 21 Real Estate Franchize [sic] known as Century 21 Advantage. Michelotti and his wife will incorporate this franchize [sic] as soon as possible since time is of the essence. The stock issued will be as follows— Northington to receive 65% of the stock and Michelotti to receive 35% of the stock.

2) Northington is operating a Century 21 real estate office known as Century 21 Alliance through a corporation known as Northington Realty. In exchange for the 65% ownership of Century 21 Advantage Northington will transfer . . . 35% of their shares to Michelotti. Thus the distribution of the outstanding shares of Northington Realty will be Michelotti 35% and the Northington's [sic] 65%.

3) It is also agreed between the parties that there shall exist an understanding between the parties . . . that addresses the issue of:

    a)   Buy out of one stock holder of the other.

    b)   [A] non compete agreement between the parties.

    c)   That ownership in any future business activities in the area of real estate, construction, insurance or real estate support services will be on a 50/50 ownership.

Thereafter, on 28 May 1993, Michelotti formed defendant Advantage Real Estate, Inc. (Advantage Real Estate) as a Century 21 franchise. Plaintiffs immediately began transferring the majority of

the corporate assets of Northington Realty to Advantage Real Estate. On 9 June 1993, after meeting with Michelotti and Northington, Michelotti's attorney, Mr. W. McNair Tornow, faxed to Northington's attorney a document labeled "Letter of Intent." This document contained terms reflecting the general information found in the handwritten document of 20 May 1993, along with specific terms regarding the issues raised in Paragraph 3 of the handwritten document. The "Letter of Intent" also contained a provision regarding Northington's agreement to be a passive investor in Advantage Real Estate.

On 2 July 1993, the parties executed a Department of the Treasury Internal Revenue Service Form 2553, requesting the federal government to grant Advantage Real Estate "S corporation" status for tax purposes. This form reflected that Northington owned 65% of Advantage Real Estate and Michelotti owned 35%.

After the Form 2553 was executed, Northington informed Michelotti that he did not agree with the contents of the "Letter of Intent" and that he would not sign it. No stock was ever transferred between the parties.

Plaintiffs instituted this action on 4 November 1993, alleging breach of contract, unjust enrichment, breach of fiduciary duty, a claim for dividends, and punitive damages. Michelotti filed a counterclaim seeking compensation from Northington Realty based on his services as sales manager and broker-in-charge of that corporation. Plaintiffs filed a motion for partial summary judgment on their breach of contract claim. Following a hearing, the trial court granted plaintiffs' motion and ordered that the shares of stock in defendant Advantage Real Estate be issued in accordance with the agreement. Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved, thereby entitling the movant to judgment as a matter of law. *Little v. National Service Industries, Inc.*, 79 N.C. App. 688, 690, 340 S.E.2d 510, 512 (1986). Defendants claim that summary judgment was improper here because there existed a genuine issue of fact as to whether the 20 May 1993 handwritten document constituted the final understanding between the parties. We agree.

In support of their motion for summary judgment, plaintiffs offered the handwritten agreement of 20 May 1993, which they claim clearly and unambiguously provided that Northington would receive 65% and Michelotti 35% of the issued and outstanding shares of

defendant corporation. Plaintiffs also submitted a letter from Michelotti to property management clients of Century 21 Alliance dated 28 May 1993 announcing the formation of Century 21 Advantage. Plaintiffs claim this letter indicates that defendants believed they had a contract with plaintiffs, thereby refuting defendants' argument that the 20 May 1993 document was merely an "agreement to agree." Plaintiffs also submitted the IRS Form 2553 signed by both parties and Michelotti's deposition testimony that when he signed the form he was aware that it recited a 65-35 split of Advantage Real Estate's stock. Finally, plaintiffs submitted the purported "Letter of Intent" prepared by Michelotti's attorney, which plaintiffs claim contains "material inconsistencies and substitutions" from the 20 May 1993 document. Plaintiffs argue that the "Letter of Intent" represented nothing more than Michelotti's attempt to renegotiate the terms of the original "contract," in which he had agreed to be a minority shareholder, in order to obtain rights not normally associated with minority shareholder status.

In opposition to plaintiffs' motion, defendants offered the affidavit of Michelotti. Michelotti opined therein that while he and Northington did discuss the ownership of Northington Realty and Advantage Real Estate, "no oral contract was ever reached and he and I never agreed upon the material terms of a future business relationship." Michelotti stated that Northington asked him to sign the handwritten document "to make him [Northington] feel better until an attorney could prepare a formal document." According to Michelotti, it was not the intention of either party at the time the handwritten document was signed that it would constitute a contract or complete understanding and agreement.

Michelotti further averred that there were terms agreed to by the parties during their negotiations that were omitted from the handwritten document (e.g., that Northington would be a passive investor in Advantage Real Estate and that Michelotti would obtain a 50% ownership interest at some future date). He stated that the parties had agreed to have an attorney prepare a formal contract; to that end, Michelotti's attorney prepared the "Letter of Intent" which Northington ultimately refused to sign. Michelotti's affidavit concluded with the statement, "Paragraph 3 of [the handwritten document] stated that Plaintiff Northington and I would reach an understanding and agreement addressing three issues. No such agreement was ever reached."

Defendants also submitted the "Letter of Intent" prepared by Michelotti's attorney. This document states in part,

> WHEREAS, the parties hereto after several discussions and negotiations by and among themselves have certain understandings as to the arrangement and relationship between the parties henceforth; and

> WHEREAS, the parties are desirous of reducing their understandings to writing via this Letter of Intent, with the further understanding and condition that additional legal documents will be effectuated and executed subsequently . . . .

Finally, defendants submitted the deposition testimony of Northington, in which he acknowledged that at the time the handwritten document was signed, he contemplated that he and Michelotti would "subsequently . . . execute an attorney-prepared formal document covering [the] points and possibilities" outlined in Paragraph 3 of the handwritten document.

It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement. *O'Grady v. Bank*, 296 N.C. 212, 221, 250 S.E.2d 587, 594 (1978).

> To constitute a valid contract, the parties "must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement."

*Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) (citation omitted); *see also* 1 Joseph M. Perillo, *Corbin on Contracts*, § 2.8(a) (revised edition 1993) (as long as the parties know there is an essential term not yet agreed upon, there is no contract). Where the parties agree to make a document or contract which is to contain any material term that is not already agreed on, no contract has been made; "a so-called 'contract to make a contract' is not a contract at all." *Corbin, supra* at § 2.8(a). Whether mutual assent has been established and whether a contract was intended between the parties are questions for the trier of fact. *Snyder v. Freeman*, 300 N.C. 204, 217, 266 S.E.2d 593, 602 (1980).

The materials submitted by the parties present a genuine issue as to whether the handwritten document reflected a "meeting of the minds" between the parties as to all essential terms of their agree-

RUSS v. GREAT AMERICAN INS. COMPANIES

[121 N.C. App. 185 (1995)]

ment or whether it merely amounted to an "understanding" or an "agreement to agree." Under our case law, this issue should have been left to the jury to resolve, and the trial court erred in granting summary judgment to plaintiffs on their breach of contract claim. The trial court's order must therefore be reversed and this cause must be remanded for trial. Having thus decided, we need not address the remaining assignments of error brought forward by defendants.

Reversed and remanded for proceedings consistent with this opinion.

Judges JOHNSON and SMITH concur.