MICHAEL LEMLY, Employee, Plaintiff v. COLVARD OIL COMPANY, Employer, and FEDERATED MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. COA01-1529

(Filed 1 April 2003)

**Workers' Compensation— mediated settlement conference—memorandum of settlement—clincher agreement**

The Industrial Commission erred in a workers' compensation case by concluding that a memorandum of settlement arising out of a mediated settlement conference was not enforceable as a compromise settlement agreement and by awarding plaintiff employee total disability benefits, because: (1) the parties signed the written memorandum of settlement at the mediation, and plaintiff agreed to execute a clincher agreement which would set out the terms of the settlement; and (2) plaintiff has not alleged that the clincher agreement contained terms different than what was agreed to at the mediation.

Appeal by defendants from opinion and award entered 5 September 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 February 2003.

*Crosswhite, Edwards & Crosswhite, by Joseph N. Crosswhite, for plaintiff-appellee.*

*Ball Barden & Bell, P.A., by Thomas R. Bell, for defendant-appellants.*

EAGLES, Chief Judge.

Colvard Oil Company and Federated Mutual Insurance Company ("defendants") appeal from an opinion and award of the full Commission concluding that a memorandum of settlement arising out of a mediated settlement conference was not enforceable as a compromise settlement agreement and awarding Michael Lemly ("plaintiff") total disability benefits. After careful consideration of the briefs and record, we reverse and remand.

The plaintiff worked for defendant Colvard Oil Company ("Colvard Oil") as a truck driver. On 6 May 1997, the plaintiff was hauling gravel when tree limbs became entangled in the bed of his truck. The plaintiff "wrestle[d]" with a tarp covering the bed of his truck. As the plaintiff lifted a tree limb from the bed of the truck, he "felt a real sharp pain" in his back and "a real bad burning sensation." The following day, the plaintiff went to the emergency room and then to his family physician.

Defendants filed a Form 60 dated 5 June 1997 admitting plaintiff's right to compensation and began paying plaintiff temporary total disability benefits. Plaintiff participated in physical therapy and received treatment from several doctors until he was cleared to return to light duty work in January 1998. Plaintiff returned to work for Colvard Oil on 26 January 1998 at a filling station subject to work restrictions. After work on 26 January, the plaintiff "could barely walk" and he proceeded to the emergency room. Dr. Mark Scott, a physician in the emergency room, advised the plaintiff to remain out of work. Dr. Charles Branch, Jr., a neurosurgeon, performed surgery on the plaintiff's back in May 1998. Plaintiff has not returned to work since 26 January 1998.

The Industrial Commission ordered the parties to participate in a mediated settlement conference which occurred on 12 August 1998. At the conclusion of the conference, the parties all signed a "Memorandum of Settlement" which stated:

The Parties agree that:

1. Defendants shall pay claimant $40,000.00 in settlement of this claim; and

2. Claimant shall pay out of the settlement proceeds all unpaid medical bills and satisfy all medical liens; and

LEMLY v. COLVARD OIL CO.

[157 N.C. App. 99 (2003)]

3. Claimant shall execute clincher setting out above terms and other standard language. Upon approval by [the Industrial Commission], settlement will be paid.

4. Defendants shall pay all mediation fees.

The day after the mediation, the defendants sent the plaintiff a clincher agreement. The plaintiff did not execute the clincher agreement and filed a Form 33 dated 15 September 1998 seeking a hearing because of "the Defendants refus[al] to provide necessary medical treatment." Defendants filed a Form 24 on 12 October 1998 seeking to terminate or suspend payment of benefits and moved to "Require Compliance with Mediated Settlement."

In an opinion and award, the Deputy Commissioner denied defendants' motion to enforce the settlement agreement. The Deputy Commissioner awarded plaintiff temporary total disability compensation from 28 January 1998 through 26 May 1999 and permanent partial disability compensation for a period of seventy-five weeks. The plaintiff and defendants appealed.

The full Commission concluded that the signed settlement agreement was "not enforceable as a Compromise Settlement Agreement." The full Commission awarded the plaintiff temporary total disability benefits from 28 January 1998 through 26 May 1999 and ongoing total disability benefits "until further order of the Commission." Defendants appeal.

On appeal, defendants contend that the full Commission erred in refusing to allow defendants to stop paying disability benefits to the plaintiff because plaintiff wrongfully refused light duty work and that the full Commission erred in failing to enforce the settlement agreement. After careful consideration, we agree.

Defendants first contend that the full Commission erred by failing to enforce the settlement agreement. Defendants argue that the parties participated in a Commission ordered mediation which resulted in an agreement to settle, signed by both parties. The plaintiff agreed to execute a clincher agreement which would set out the terms of the settlement. Defendants argue that the plaintiff has not alleged that the clincher agreement contained terms different than what was agreed to at the mediation. We agree.

"[O]ur role in reviewing decisions of the Commission is strictly limited to the two-fold inquiry of (1) whether there is competent evi-

dence to support the Commission's findings of fact; and (2) whether these findings of fact justify the Commission's conclusions of law." *Foster v. Carolina Marble & Tile Co.*, 132 N.C. App. 505, 507, 513 S.E.2d 75, 77, *disc. review denied*, 350 N.C. 830, 537 S.E.2d 822 (1999). "The Commission's findings will not be disturbed on appeal if they are supported by competent evidence even if there is contrary evidence in the record. However, the Commission's conclusions of law are reviewable *de novo* by this Court." *Hawley v. Wayne Dale Constr.*, 146 N.C. App. 423, 427, 552 S.E.2d 269, 272, *disc. review denied*, 355 N.C. 211, 558 S.E.2d 868 (2001) (citations omitted).

Here, the full Commission found that:

The parties participated in a mediated settlement conference pursuant to an Order of the Commission dated 25 March 1998. On 12 August 1998, the *mediation was held and an agreement was reached between the parties. The parties signed a handwritten memorandum of the settlement,* pending the execution by plaintiff of a clincher agreement. While returning home from the conference, plaintiff determined that he did not wish to follow through with the agreement, and did not prepare a clincher agreement.

(Emphasis added.) The full Commission then concluded that "[t]he handwritten Memorandum of Settlement signed by the parties on 12 August 1998 is not enforceable as a Compromise Settlement Agreement under Industrial Commission Rule 502."

Pursuant to G.S. § 97-80(c), "[t]he Commission may order parties to participate in mediation." The duties of the parties if an agreement is reached in the mediation are:

(d) Finalizing agreement. If an agreement is reached in the mediation conference, the parties shall reduce the agreement to writing, specifying all the terms of their agreement bearing on the resolution of the dispute before the Industrial Commission, and sign it along with their counsel. By stipulation of the parties and at their expense, the agreement may be electronically or stenographically recorded. All agreements for payment of compensation shall be submitted in proper form for Industrial Commission approval, and shall be filed with the Commission within 20 days of the conclusion of the mediation conference.

Mediated Settlement and Neutral Evaluation Conferences R. of N.C. Indus. Comm'n 4(d), 2003 Ann. R. (N.C.) 866. "All compromise settle-

ment agreements must be submitted to the Industrial Commission for approval. Only those agreements deemed fair and just and in the best interest of all parties will be approved." Workers' Comp. R. of N.C. Indus. Comm'n 502(1), 2003 Ann. R. (N.C.) 834. "A 'clincher' or compromise agreement is a form of voluntary settlement used in contested or disputed cases." *Ledford v. Asheville Housing Authority,* 125 N.C. App. 597, 599, 482 S.E.2d 544, 546, *disc. review denied,* 346 N.C. 280, 487 S.E.2d 550 (1997). The settlement agreement "must contain specified language or its equivalent" to be approved by the Industrial Commission. *Id.; see also* Workers' Comp. R. of N.C. Indus. Comm'n 502(2), 2003 Ann. R. (N.C.) 834.

Compromise settlement agreements, including mediated settlement agreements, "are governed by general principles of contract law." *Chappell v. Roth,* 353 N.C. 690, 692, 548 S.E.2d 499, 500, *reh'g denied,* 354 N.C. 75, 553 S.E.2d 36 (2001). "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti,* 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995). "To be enforceable, the terms of a contract must be sufficiently definite and certain." *Miller v. Rose,* 138 N.C. App. 582, 587-88, 532 S.E.2d 228, 232 (2000).

Here, at the mediation the parties signed a written "Memorandum of Settlement." Plaintiff, plaintiff's attorney, defendants' attorney, and a representative of defendant Federated Mutual Insurance Company all signed this memorandum. The memorandum began with the language "[t]he parties agree that: (1) Defendants shall pay claimant $40,000.00 in settlement of this claim." It further stated that the "[c]laimant shall pay out of the settlement proceeds all unpaid medical bills and satisfy all medical liens" and that "[d]efendants shall pay all mediation fees." The memorandum also stated that "[c]laimant shall execute clincher setting out above terms and other standard language. Upon approval by [the Industrial Commission], settlement will be paid."

The language of this signed memorandum indicates that the parties agreed to settle this matter for $40,000.00 and provides for the payment of plaintiff's unpaid medical bills and medical liens. It references a clincher agreement that "[plaintiff] shall execute." The defendants, in accordance with the signed "Memorandum of Settlement," prepared a clincher agreement and sent it to the plaintiff the day after the mediation. This clincher agreement contained

the standard terms required by Rule 502(2) of the Workers' Compensation Rules of the North Carolina Industrial Commission.

In addition, the "Report of Mediator" states that the "parties reached: X agreement on all issues." It further states that the "[i]ssues settled to be disposed of by: X clincher." Defendants' "Motion to Require Compliance with Mediated Settlement" provides that:

4. On 12 August 1998 mediation occurred which resulted in a mediated settlement agreement. . . .

5. On 12 August 1998, as a result of mediation, the parties settled all issues between them. A written memorandum of this agreement prepared at mediation is attached . . . to this Motion.

6. As a result of this settlement agreement, the undersigned attorney for Employer and Carrier prepared a Clincher Agreement and mailed it to Employee's attorney. In early September telephone conversations occurred between attorneys for the parties indicating that Employee would not go through with the settlement. On 15 September 1998 Employee's attorney wrote attorney for Employer and Carrier a letter . . . indicating that his client would not go through with settling this claim and that he was, in fact, filing an additional Form 33.

"Plaintiff's Response" to this motion stated that "[p]laintiff does not dispute the facts as set forth in the Defendant's Motion."

While the better practice would be for the parties to execute a clincher agreement which contains all the required terms and language at the conclusion of the mediated settlement conference if an agreement is reached, the signed "Memorandum of Settlement" here fully complies with Rule 502(2) of the Workers' Compensation Rules and is a valid compromise settlement agreement subject to approval by the Industrial Commission pursuant to Rule 502(1).

Because we have concluded that the written "Memorandum of Settlement" is a valid compromise settlement agreement, we need not address defendants' remaining assignments of error.

Accordingly, the opinion and award of the full Commission is reversed and the matter remanded to the full Commission in order for the full Commission to consider its approval of the mediated settlement agreement pursuant to Rule 502(1) of the Workers' Compensa-

tion Rules, i.e., is the agreement "deemed fair and just and in the best interest of all parties."

Reversed and remanded.

Judges MARTIN and GEER concur.