RODNEY ACTON, Employee, Plaintiff-Appellant,
v.
LOWES, Employer, and SPECIALTY RISK SERVICES, Carrier, Defendants-Appellees.
No. COA07-1436
Court of Appeals of North Carolina
Filed September 2, 2008
This case not for publication
Brantley, Jenkins, Riddle, Hardee & Hardee, L.L.P., by Gene A. Riddle and Donald K. Phillips, for Plaintiff-Appellant.
Cranfill Sumner & Hartzog LLP, by Meredith Taylor Berard and Nicole D. Viele, for Defendants-Appellees.
McGEE, Judge.
The record in this case shows that Rodney Acton (Plaintiff) injured his leg on 18 December 1998 while working at Lowes (Defendant) in Smithfield, North Carolina. Plaintiff filed a claim in file number 916514 for workers' compensation benefits. A physician assigned a twenty-percent permanent partial disability rating to Plaintiff's left knee. The parties settled Plaintiff's claim for $8,267.20 on 4 May 2001. Following a functional capacity evaluation (FCE), Plaintiff returned to work for Defendant with a fifty-five-pound lifting restriction.
Plaintiff sustained another work-related injury to his back on 17 February 2002 when he fell off a ladder while at work. Plaintiff filed a new claim in file number 217415 for workers' compensation benefits. Plaintiff was originally treated by Dr. Kevin Speer (Dr. Speer), who diagnosed Plaintiff with lumbar and cervical strain and contusion. Plaintiff's condition failed to improve after physical therapy and medication, and Dr. Speer referred Plaintiff to Dr. Gary Smoot (Dr. Smoot) for further care. Dr. Smoot initially treated Plaintiff with steroids and additional physical therapy, but Plaintiff's condition again failed to improve. Dr. Smoot was "at a complete loss to come up with any type of physiologic reason for [Plaintiff's] continued symptoms," and assigned a zero-percent permanent partial disability rating to Plaintiff's back. Following another FCE, Plaintiff was cleared to return to work at a medium physical demand category.
Plaintiff did not return to work but instead filed a request on 30 September 2002 asking that his claims in files number 916514 and 217415 be assigned for hearing. Plaintiff contended that he was entitled to additional medical treatment and asserted that the zero-percent rating to his back was incorrect. Plaintiff's claims were consolidated for hearing on 18 November 2002.
While Plaintiff's consolidated claims were pending, Plaintiff was treated by Dr. Richard Dobson (Dr. Dobson) on 15 January 2003. Dr. Dobson diagnosed Plaintiff as having "a significant disk injury." Dr. Dobson also stated that "[i]n my opinion [Plaintiff]does have a significant impairment from the injury that occurred when he fell off a ladder at [Lowes]. I believe full diagnosis has not yet been reached. I do not believe [Plaintiff] has had full benefit of physical medicine interventions."
Prior to the hearing on Plaintiff's claims, the parties participated in a mediated settlement conference on 21 February 2003. At the end of the mediation, the parties signed a document entitled "Memorandum of Mediated Settlement" (the Settlement Agreement). The Settlement Agreement provided, in pertinent part:
The parties hereto stipulate and agree that at the Mediated Settlement Conference held on the 21 day of February, 2003, at Selma, N.C., a full and final agreement of all issues was reached. The terms of this agreement are:
1. Defendant shall pay Plaintiff the total sum of $25,000.00. . . .
. . . .
3. This matter has been settled by consent. A Clincher Agreement shall be prepared by the attorney for . . . Defendant. The terms are as follows: Defendant shall pay Plaintiff the total sum of $25,000.00 upon approval of the Clincher Agreement by Plaintiff [and] the N.C. Industrial Commission. Plaintiff shall resign his employment with Defendant effective as [of the] date of [Industrial Commission] approval. Plaintiff shall return Defendant's Clincher Agreement within 5 business days of receipt. Defendant shall pay all costs of mediation.
Counsel for Defendant prepared a clincher agreement in accordance with the Settlement Agreement. However, Plaintiff refused to sign the clincher agreement and, on 27 August 2004, filed a new request that his claims be assigned for hearing. Defendant filed a response requesting that the 21 February 2003Settlement Agreement be enforced.
Deputy Commissioner Myra L. Griffin (Deputy Commissioner Griffin) heard Plaintiff's claim on 28 June 2005. Deputy Commissioner Griffin entered an interlocutory opinion and award on 19 September 2005 concluding that the Settlement Agreement did not represent a fair settlement and was therefore unenforceable. Defendant appealed Deputy Commissioner Griffin's interlocutory opinion and award to the North Carolina Industrial Commission (the Commission). The Commission entered an order on 10 October 2005 denying Defendant's request for immediate appeal of Deputy Commissioner Griffin's interlocutory order and award.
Deputy Commissioner Griffin entered a final opinion and award on 15 November 2006 in which she vacated her prior interlocutory opinion and award and concluded that the Settlement Agreement was valid, fair, and enforceable. Plaintiff appealed Deputy Commissioner Griffin's final opinion and award to the Commission. The Commission entered an opinion and award on 24 July 2007 finding, inter alia:
11. The parties participated in a mediated settlement conference on February 21, 2003. . . . At the mediation, the parties settled both claims for $25,000.00, and . . . [P]laintiff signed the mediated settlement agreement. . . .
12. . . . [T]he February 21, 2003 mediated settlement agreement is fair and just and in the best interests of all parties and should be enforced. As such, the [Settlement] Agreement is in accord with the intent and purpose of the Workers' Compensation Act because . . . [P]laintiff will receive correct, fair, and just disability benefits.
. . . .
15. . . . [A] meeting of the minds was reached on all material terms of the contract and, thus, the mediated settlement agreement entered into by [the] parties is enforceable.
Based on these findings of fact, the Commission made the following conclusion of law:
1. The North Carolina Court of Appeals has held that a written memorandum of mediated settlement is a valid compromise settlement agreement subject to the approval of the Industrial Commission. Lemly v. Colvard Oil Company, 157 N.C. App. 99, 104, 577 S.E.2d 712, 716 (2003). Under Lemly v. Colvard Oil Company, supra, the Mediated Settlement Agreement entered into in the present case was an enforceable agreement. Id.

The Commission then ordered that the Settlement Agreement be enforced. Plaintiff appeals.
"The standard of appellate review of an opinion and award of the Industrial Commission in a workers' compensation case is whether there is any competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law." Lineback v. Wake County Board of Commissioners, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997). We review the Commission's legal conclusions de novo. Lewis v. Sonoco Prods. Co., 137 N.C. App. 61, 68, 526 S.E.2d 671, 675 (2000).

I.
Plaintiff argues that the terms of the Settlement Agreement are too indefinite to be enforceable, and that the Settlement Agreement lacks material terms required by administrative regulations and our prior case law. We agree.
"A `clincher' or compromise agreement is a form of voluntary settlement used in contested or disputed cases." Ledford v. Asheville Housing Authority, 125 N.C. App. 597, 599, 482 S.E.2d 544, 546, disc. review denied, 346 N.C. 280, 487 S.E.2d 550 (1997). A clincher must be approved by the Commission under N.C. Gen. Stat. § 97-17(a), and it must contain certain terms specified in N.C. Gen. Stat. § 97-17(b) and in 4 N.C.A.C. 10A.0502 (Rule 502). The parties in the current case did execute a mediated settlement agreement, but Plaintiff refused to execute the clincher prepared by Defendant following the mediation.
Our Court has previously held that a mediated settlement agreement may be treated as a clincher if it satisfies the various requirements of a clincher. In Lemly v. Colvard Oil Co., 157 N.C. App. 99, 577 S.E.2d 712 (2003), the plaintiff injured his back while driving a truck in the scope of his employment with the defendant. Id. at 100, 577 S.E.2d at 713. The parties participated in a mediated settlement conference and signed a "Memorandum of Settlement." Id. Under the terms of the Memorandum of Settlement, the defendant agreed to pay the plaintiff $40,000.00 in settlement of the plaintiff's workers' compensation claim, and the plaintiff agreed to execute a clincher setting out the terms of the settlement. Further, the plaintiff agreed to pay all unpaid medical bills out of the proceeds of the settlement. Id. at 100-01, 577 S.E.2d at 713. When the defendant sent the plaintiff the clincher, however, the plaintiff refused to execute the clincher and instead sought additional workers' compensation benefits. Id. at 101, 577 S.E.2d at 714.
Our Court held that even though the plaintiff did not execute the clincher, the Memorandum of Settlement could be considered a valid compromise settlement agreement subject to approval by the Commission if two requirements were met. Id. at 103-04, 577 S.E.2d at 715-16. First, our Court noted that the Memorandum of Settlement was governed by general contract-law principles. Therefore, to be a valid contract, there must have been "'a meeting of the minds as to all essential terms of the agreement,'" and the terms of the agreement "'must be sufficiently definite and certain.'" Id. at 103, 577 S.E.2d at 715 (quoting Northington v. Michelotti, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995); Miller v. Rose, 138 N.C. App. 582, 587-88, 532 S.E.2d 228, 232 (2000)). Second, our Court stated that "[w]hile the better practice would be for the parties to execute a clincher agreement which contains all the required terms and language at the conclusion of the mediated settlement conference if an agreement is reached," the Memorandum of Settlement could still be considered a valid compromise settlement agreement if it "fully complies with Rule 502(2) of the Workers' Compensation Rules[.]" Id. at 104, 577 S.E.2d at 716. Our Court then concluded that the Memorandum of Settlement contained sufficiently definite and certain terms, and fully complied with the requirements of Rule 502. Id. at 103-04, 577 S.E.2d at 715-16.
The Settlement Agreement in the current case, however, meets neither of these requirements. First, the Settlement Agreement in this case is not sufficiently definite with regard to the actual claims being settled. In Lemly, the parties' Memorandum of Settlement specifically stated that the plaintiff would receive $40,000.00 in exchange for a settlement of his workers' compensation claim. See Lemly, 157 N.C. App. at 100, 577 S.E.2d at 713. The Settlement Agreement in this case, however, merely provides that "Defendant shall pay Plaintiff the total sum of $25,000.00," and that in exchange, "Plaintiff shall resign his employment with Defendant" and "shall return Defendant's Clincher Agreement within 5 business days[.]" The Settlement Agreement does not purport to settle any of Plaintiff's workers' compensation claims and, in fact, contains no reference whatsoever to Plaintiff's workers' compensation claims.
Second, even if the Settlement Agreement was sufficiently definite to constitute a valid contract for the settlement of Plaintiff's workers' compensation claims, the Settlement Agreement did not meet the requirements of Rule 502 and therefore was not eligible for Commission approval. Rule 502 provides, in part:
(2) No compromise agreement will be approved [by the Commission] unless it contains the following language or its equivalent:
(a) Where liability is admitted, that the employer or carrier/administrator undertakes to pay all medical expenses to the date of the agreement.
. . . .
(c) That the employee knowingly and intentionally waives the right to further benefits under the Workers' Compensation Act for the injury which is the subject of this agreement.
. . . .
(e) That no rights other than those arising under the provisions of the Workers' Compensation Act are compromised or released.
(f) That the employee has, or has not, returned to a job or position at the same or a greater average weekly wage as was being earned prior to the injury or occupational disease.
4 N.C.A.C. 10A.0502(2) (2007).
It is plain that the Settlement Agreement in this case does not contain the terms set out above, nor does it contain the "equivalent" of those terms. The Settlement Agreement does not address Plaintiff's job status, as required by Rule 502(2)(f). In addition, unlike in Lemly, the Settlement Agreement here contains no provision regarding the payment of medical expenses, as required by Rule 502(2)(a). Further, while the Memorandum of Settlement in Lemly stated that the plaintiff accepted $40,000.00 in settlement of his workers' compensation claim, the Settlement Agreement here contains no indication that Plaintiff waived his right to further workers' compensation benefits, as required by Rule 502(2)(c). The Settlement Agreement likewise contains no language regarding the parties' rights outside of the provisions of the Workers' Compensation Act, as required by Rule 502(2)(e).
Our Court has previously reversed the Commission's approval of a settlement agreement where the agreement failed to comply with the requirements of Rule 502(2). In Kyle v. Holston Group, ___N.C. App. ___, 656 S.E.2d 667, disc. review denied, ___ N.C. ___, ___ S.E.2d ___ (2008), the plaintiff was injured in the scope of his employment with the defendant. Id. at ___, 656 S.E.2d at 669. The parties executed a settlement agreement that failed to include certain information required by Rule 502(2)(h). Id. at ___, 656 S.E.2d at 669-70; see 4 N.C.A.C. 10A.0502(2)(h) (2007) (requiring that, in certain circumstances, a settlement agreement "shall summarize the employee's age, education level, past vocational training, past work experience, and any impairment, emotional, mental or physical, which predates the current injury or occupational disease"). The Commission issued an order approving the agreement, but the plaintiff later sought to set aside the agreement and vacate the Commission's prior order. Id. at ___, 656 S.E.2d at 670.
On appeal, our Court held that because the settlement agreement did not contain language required by Rule 502(2)(h), "it was statutorily impermissible for the Commission to approve the [a]greement without the required biographical and vocational information[.]" Id. at ___, 656 S.E.2d at 671. The defendant contended that the omission should be excused because the purpose of Rule 502 was to ensure that the Commission was aware of the plaintiff's biographical and vocational information, and the defendant had provided this information to the Commission through other means. Id. at ___, 656 S.E.2d at 671. Our Court disagreed:
While one purpose of Rule 502(2)(h) may be, as [the defendant] contend[s], "to make sure the Industrial Commission is privy to the information required by the Rule[,]" the Rule undoubtably also serves to ensure that . . . "an injured worker [] understand[s] what he or she is signing off on and agreeing to." Furthermore, according to the rules of statutory construction, "[w]hen the language of a statute is clear and unambiguous, it must be given effect and its clear meaning may not be evaded by an administrative body or a court[.]" . . . Our Supreme Court has applied the rules of statutory construction to administrative regulations as well as statutes.
Here, the language of Rule 502(2)(h) clearly and unambiguously states that "[n]o compromise agreement will be approved unless it contains the following language or its equivalent. . . ." Thus, according to the plain meaning of the regulation, the required terms must be in the agreement itself in order for the agreement to be approved by the Commission.
Id. at ___, 656 S.E.2d at 671 (emphases omitted) (citations omitted) (quoting Taylor v. J.P. Stevens Co., 307 N.C. 392, 396, 298 S.E.2d 681, 683 (1983)). Our Court held that the Commission erred by not setting aside the settlement agreement, and we remanded the case to the Commission to enter an order vacating its prior approval of the settlement agreement. Id. at ___, ___, 656 S.E.2d at 672, 676; see also Smythe v. Waffle House, 170 N.C. App. 361, 366-67, 612 S.E.2d 345, 349-50, disc. review denied, 360 N.C. 66, 621 S.E.2d 876 (2005) (reversing the Commission's order approving a settlement agreement where the agreement did not contain the information required by Rule 502(2)(h)).
In the current case, the Settlement Agreement lacked numerous provisions required by Rule 502. Therefore, the Settlement Agreement could not substitute for a valid clincher under Lemly. Further, pursuant to Rule 502 and Kyle, "it was statutorily impermissible for the Commission to approve the [a]greement[.]" Kyle, ___ N.C. App. at ___, 656 S.E.2d at 671. We therefore hold that the Commission erred by concluding that the Settlement Agreement was "a valid compromise settlement agreement subject to the approval of the Industrial Commission." We reverse and remand to the Commission to enter an order vacating its approval of the Settlement Agreement, and for further proceedings as necessary.

II.
Defendant argues that N.C. Gen. Stat. § 97-17(a) forecloses Plaintiff's challenge to the Settlement Agreement. This statute provides in part:
No party to any agreement for compensation approved by the Commission shall deny the truth of the matters contained in the settlement agreement, unless the party is able to show to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Commission may set aside the agreement. Except as provided in this subsection, the decision of the Commission to approve a settlement agreement is final and is not subject to review or collateral attack.
N.C. Gen. Stat. § 97-17(a) (2007). According to Defendant, because the Commission approved the parties' Settlement Agreement, Plaintiff may only challenge the Settlement Agreement on the grounds of fraud, misrepresentation, undue influence, or mutual mistake.
We disagree with Defendant's contention. As is clear from Lemly, Kyle, and Smythe, N.C.G.S. § 97-17(a) does not preclude a plaintiff from challenging a settlement agreement on the grounds that the Commission lacked the statutory authority to approve the settlement agreement in the first instance. Defendant's reading of N.C.G.S. § 97-17(a) would allow the Commission to sidestep the requirements of Rule 502 by approving an inadequate settlement agreement and then holding that N.C.G.S. § 97-17(a) forecloses any challenge to the validity of its action under Rule 502. We decline to adopt such an interpretation of N.C.G.S. § 97-17(a).
Based on the above, we do not address Plaintiff's remaining assignments of error.
Reversed and remanded.
Judges ELMORE and JACKSON concur.
Report per Rule 30(e).