The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 *********** EXHIBITS
At the hearing before the Deputy Commissioner, the following documents were submitted into evidence:
 a. A packet of various documents, the first page reading "Table of Content," which was admitted into the record and marked as plaintiff's exhibit (1), *Page 2 
 b. A one-page report from Southeast Pain Management dated February 21, 2008, which was admitted into the record and marked as plaintiff's exhibit (2), and
 c. A packet of documents, the first page reflecting that the packet was "Plaintiff's Responses to Defendant's First Set of Interrogatories and Request for Production of Documents", which was admitted into the record and marked as defendant's exhibit (1).
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant.
3. At all relevant times, defendant was a duly qualified self-insured.
4. Prior to the alleged injury giving rise to this claim, plaintiff sustained an injury by accident to her cervical spine on December 17, 1984, while she was employed by Picker International. That claim is the subject of I.C. File No. 533390.
5. Plaintiff was paid compensation for medical treatment and lost wages related to her claim in I.C. File No. 533390, and was released at maximum medical improvement without restrictions on August 8, 1985. Plaintiff's last payment of compensation was in September 1985. *Page 3 
6. On February 16, 1988, plaintiff filed an Industrial Commission Form 33 alleging a change of condition related to I.C. File No. 533390. The claim was dismissed in 1991 for failure to comply with filing requirements of N.C. Gen. Stat. § 97-47.
7. On September 23, 2003, plaintiff filed another Form 33 related to I.C. File No. 533390.
8. In December 2004, the Full Commission affirmed the prior dismissal of plaintiff's claim associated with I.C. File No. 533390.
9. On June 11, 2003, plaintiff filed an Industrial Commission Form 18 related to the claim before Deputy Commissioner Houser, alleging an injury to her "right hand, right arm, hip, side, neck, etc.," occurring on "10/___/2002" while lifting a case of toilet tissue. IC File No. 364272 was assigned to this claim upon plaintiff's filing of her Form 18.
10. Thereafter, plaintiff retained counsel, Craig O. Asbill, in 2004.
11. Plaintiff then retained Andre Tippens to represent her. Mr. Tippens filed a second Form 18 for the claim before the Deputy Commissioner, alleging that plaintiff injured her neck and back on October 15, 2002. IC File No. 426756 was assigned to the claim upon the filing of the Form 18 by Mr. Tippens, thereby resulting in two I.C. File numbers being assigned to the claim before Deputy Commissioner Houser.
12. On September 6, 2006, plaintiff, then proceeding without legal representation, filed another Industrial Commission Form 33, requesting a hearing for an injury to her "low back area" with a date of injury of allegedly October 15, 2002.
13. This claim was placed on the March 20, 2007 hearing docket of Deputy Commissioner Philip A. Baddour, III. *Page 4 
14. Plaintiff then retained Annemarie Pantazis as her attorney on or about March 9, 2007, and the claim was set for mediation at the request of the parties.
15. At the conclusion of the July 16, 2007 mediation, the parties reached an agreement to settle plaintiff's workers' compensation claim for $5,000.00. The Mediated Settlement Agreement was signed by plaintiff, Ms. Pantazis, the mediator, and counsel for defendant.
16. Pursuant to the executed Mediated Settlement Agreement, counsel for defendant mailed Ms. Pantazis a completed Compromise Settlement Agreement on July 20, 2007. However, plaintiff refused to sign the Compromise Settlement Agreement and Ms. Pantazis was permitted by the Industrial Commission to withdraw as counsel for plaintiff.
17. On August 23, 2008, Deputy Commissioner Houser filed an Opinion and Award finding that the mediated settlement agreement entered into by the parties and signed by plaintiff on July 16, 2007 constituted a valid contractual agreement. The Deputy Commissioner further found that the Agreement complied with Rule 502(2) of the Workers' Compensation Rules of the North Carolina Industrial Commission and was a valid Compromise Settlement Agreement subject to approval by the Industrial Commission, pursuant to Workers' Compensation Rules of the North Carolina Industrial Commission, Rule 502(1).
18. Plaintiff initially testified at the Deputy Commissioner's hearing on July 16, 2008 that defendant was never in possession of any of her medical records from Southeast Pain Care because none of her former attorneys were ever authorized by her to obtain these records.
19. Nonetheless, on July 2, 2007, defendant received plaintiff's responses to defendant's first set of interrogatories and request for production of documents. Included in plaintiff's production of documents were records from Southeast Pain Care, where plaintiff was *Page 5 
treated by Dr. Muniz. Additionally, plaintiff clarified her earlier testimony at the Deputy Commissioner's hearing on July 16, 2008, stating that defendant was actually provided some of her medical records from Southeast Pain Care prior to the July 17, 2007 mediation and that she had in fact given her most recent former counsel, Ms. Pantazis, a signed authorization to obtain all of her medical records. The Commission finds that the clincher agreement drafted by defendant references plaintiff's treatment with Southeast Pain Care.
20. Plaintiff attempted at both hearings before Deputy Commissioner Houser to testify that what may or may not have occurred during the parties' mediation was in violation of the Industrial Commission's Rules for Mediated Settlement Conferences, specifically Rule 3(f). However, any reference as to what occurred at the mediation cannot be considered by the Commission.
21. Even considering plaintiff's exhibit (2), which reflects the opinion of a physician's assistant at Southeast Pain Management that no attorney requested records from that facility, based upon the totality of the credible and admissible evidence of record, the Commission finds that plaintiff's position regarding a purported absence or ignorance of these records is without merit. To the contrary, based upon the evidence of record and the Deputy Commissioner's hearing testimony, plaintiff was attempting to include consideration of the medical records of her cervical condition, which was the subject of her dismissed claim in I.C. No. 533390, to the incident and claim before Deputy Commissioner Houser. The fact that plaintiff's cervical condition in that claim may or may not have resolved is not an issue to be considered by the Commission.
22. The Commission finds that plaintiff's pertinent medical records, including records from Southeast Pain Management and other admissible evidence, were before the Deputy *Page 6 
Commissioner at the time he reviewed the Compromise Settlement Agreement. The parties reached a valid Mediated Settlement Agreement for $5,000.00, which should be enforced and the Compromise Settlement Agreement approved.
 *********** *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff signed a valid and enforceable Mediated Settlement Agreement on July 16, 2007. This agreement was a binding contract. Compromise Settlement Agreements, including Mediated Settlement Agreements, are governed by general principles of contract law.Lemly v. Colvard Oil Co., 157 N.C. App. 99, 577 S.E.2d 712 (2003).
2. The Compromise Settlement Agreement drafted by defendant was in proper form. To be in proper form, a Compromise Settlement Agreement must be accompanied by copies of all pertinent medical and vocational rehabilitation records, a signed release of liability, and must meet the other requirements set forth in the Rule. Workers' Compensation Rules of the North Carolina Industrial Commission, Rule 502.
3. The $5,000.00 settlement amount reached by the parties, as reflected in the Compromise Settlement Agreement, was fair and just and in the best interest of all parties, as required by Workers' Compensation Rules of the North Carolina Industrial Commission Rule 502(1) and thus, should be approved. Vernon v. Steven L. MabeBuilders, 336 N.C. 425, 444 S.E.2d 191 (1994).
 *********** *Page 7 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff $5,000.00 pursuant to the Mediated Settlement Agreement entered into by the parties on July 16, 2007.
2. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for plaintiff's current counsel. It should be noted that plaintiff's most recent former counsel, Ms. Pantazis, has also claimed a right to this fee or a portion thereof. Ms. Pantazis will be sent a copy of this Opinion and Award and it is the obligation of plaintiff's current counsel and Ms. Pantazis to reach an agreement as to the division of the attorney's fee.
3. Each side shall bear its own costs.
This 23rd day of April, 2009.
S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1