* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner, with certain modifications.
 * * * * * * * * * * *
At the March 25, 2010 hearing before the Deputy Commissioner, the following were entered into evidence as:
 EXHIBITS *Page 2 
1. A group of documents submitted by Defendants including a proposed
Pretrial Agreement, Industrial Commission Forms filed in this matter, correspondence, and medical records. These items are collectively marked as Defendants' Exhibit 1.
2. A group of documents submitted by plaintiff including correspondence, personnel records, and medical records relating to this claim. These items are collectively tabbed 1-36 and are marked as Plaintiff's Exhibit 1.
 * * * * * * * * * * * ISSUES PRESENTED
1. Did Plaintiff possess the mental capacity to enter into a binding legal agreement at the time of the July 9, 2009 Mediated Settlement Conference?
2. Is the July 9, 2009 Mediated Settlement Agreement enforceable pursuant to N.C. Gen. Stat. § 97-17, North Carolina Workers' Compensation Rule 502, and the applicable case law?
3. Is the subsequent Agreement of Final Settlement and Release fair and just and in the best interests of all parties such that it should be approved?
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. An employment relationship between Plaintiff and Defendant-Employer existed on June 1, 2008.
2. On June 1, 2008, the parties were subject to the North Carolina Workers' Compensation Act. *Page 3 
3. New Hampshire Insurance Company was the carrier responsible for workers' compensation coverage on June 1, 2008.
4. All parties are properly before the North Carolina Industrial Commission and there are no issues as to misjoinder or nonjoinder of the parties.
5. Plaintiff is 58 years old. She holds a college degree in economics. Before coming to work for Defendant-Employer, Plaintiff was a vice-president at Bank of America. She also held now-expired licenses in securities, real estate, and insurance.
6. On June 1, 2008, Plaintiff worked for Defendant-Employer as a Flight Attendant based at Charlotte-Douglas International Airport in Charlotte, North Carolina.
7. The alleged incident giving rise to the underlying claim in this matter occurred on June 1, 2008. Plaintiff filed a Form 18 on or about June 11, 2008, alleging that her "Back and Foot" were injured as a result of turbulence she experienced while working a flight for Defendant-Employer on June 1, 2008. Defendants denied Plaintiff's claim in a Form 61 dated June 11, 2008.
8. Plaintiff, while initially without counsel, filed a Form 33 Request for Hearing dated June 16, 2008. This Form listed "Foot and Back" as the body parts allegedly injured. Deputy Commissioner John Schafer ordered this matter into mediation.
9. Dr. Joseph Estwanik, having examined Plaintiff and studied Plaintiff's prior medical records, issued a written evaluation on June 23, 2009. This document reads, in pertinent part: "I do not feel that [Plaintiff] needs further treatment with regard to her stated injury of 06/01/08. She has long ago resolved any documentable and sustained injury to the left ankle and back. . . . [P]laintiff has reached pre-injury status and no documentable further injury has been confirmed." *Page 4 
10. The parties mediated the claim on July 9, 2009. By that time, Plaintiff had retained Vernon Sumwalt to represent her. Mr. Sumwalt is a board-certified specialist in North Carolina workers' compensation law and has considerable experience representing employees in workers' compensation claims generally, and in representing employees of Defendant-Employer specifically. At the mediation, Defendants were represented by Ms. Frances Clement, an experienced workers' compensation defense attorney. The mediator was Mr. Mark Crowther, an experienced mediator and workers' compensation attorney.
11. Counsel for the parties physically attended the mediated settlement conference. Plaintiff and the adjuster for Defendants attended via telephone as permitted by Rule 4(b)(2) of the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission. Plaintiff spoke with Mr. Sumwalt via telephone during the July 9, 2009 mediation. During these discussions, Plaintiff authorized offers and counter-offers until an agreement was reached to settle her case. Attorney Sumwalt has significant experience representing plaintiffs in workers' compensation mediation settlement conferences. Attorney Sumwalt would not have agreed to the settlement had it been unfavorable to Plaintiff.
12. Plaintiff testified at the hearing before the Deputy Commissioner that, on the day of the Mediated Settlement Conference, she took "three Vicodin" as well as "two Xanax" and that, as a result of her medicated state, she was intoxicated to the extent that she "would have signed anything."
13. Attorney Sumwalt possesses expertise in dealing with clients who are intoxicated and/or who have mental deficiencies. Attorney Sumwalt testified at the hearing before the Deputy Commissioner that it is his practice not to allow mentally incapacitated clients to go forward with mediation. Notwithstanding that he did not observe Plaintiff in person on July 9, *Page 5 
2009, Mr. Sumwalt interacted with her sufficiently on that date so as to have the ability, given his experience, to judge accurately her level of mental competence and/or intoxication.
14. Other than her own testimony, Plaintiff provided no evidence of her alleged intoxication and/or mental incapacity on July 9, 2009.
15. Given his relative experience and expertise, the Full Commission accords more weight to the testimony of Attorney Vernon Sumwalt than that of Plaintiff. Attorney Sumwalt would not have allowed Plaintiff to go forward with the mediation or to enter into the Mediated Settlement Agreement had he felt her to be mentally incompetent or intoxicated.
16. Upon reaching an agreement at the Mediated Settlement Conference of July 9, 2009, two written instruments were created by the parties and mediator. One is the Mediated Settlement Agreement that was signed by Plaintiff, attorney for Plaintiff, attorney for Defendants, and the mediator. Plaintiff also executed a handwritten side agreement that anticipated a general release, plaintiff's resignation from employment, and the general terms of her retirement benefits. The faces of the agreements signed on July 9, 2009, indicate that more detailed agreements would be prepared and executed. Neither agreement references the other and nothing on the face of the Mediated Settlement Agreement indicates that it is contingent on the execution of the handwritten side agreement.
17. Because Plaintiff was attending via telephone, the agreements were sent via facsimile to Plaintiff at her home in Indiana. Plaintiff signed the agreements and returned them via facsimile to the site of the mediation. Those attending the mediation then signed the faxed Mediated Settlement Agreement. *Page 6 
18. The Mediated Settlement Agreement signed by the parties on July 9, 2009, tracks identically or nearly identically the language of Industrial Commission Form MSC8, which is the Industrial Commission's Mediated Settlement Agreement Form.
19. In accordance with the parties' agreement, Defendants prepared and tendered to Plaintiff's counsel a formal Agreement of Final Settlement and Release for the workers' compensation claim, as well as a document entitled "Separation Agreement, General Release and Waiver of Claims." Plaintiff's counsel, in turn, sent these items to Plaintiff. Plaintiff refused to sign these agreements, ostensibly because she misunderstood the retirement benefits she would receive from Defendant-Employer. Shortly thereafter, Attorney Vernon Sumwalt was permitted to withdraw as Plaintiff's counsel.
20. Defendants filed a Form 33 dated September 10, 2009, requesting a hearing to seek the enforcement of the July 9, 2009 Mediated Settlement Agreement.
21. Plaintiff's Form 44 filed on appeal assigned error only to the Deputy Commissioner's designation of Defendant as U.S. Airways Group, instead of U.S. Airways, and to the award of a $10,000.00 attorney's fee to Mr. Sumwalt. In her Brief to the Full Commission, Plaintiff raises multiple issues which focus primarily on the handwritten side agreement she signed during the mediation and the "Separation Agreement, General Release and Waiver of Claims" that Defendants subsequently drafted and presented to Plaintiff and Mr. Sumwalt.
22. The Mediated Settlement Agreement and the formal Agreement of Final Settlement and Release both contain all of the language or findings required by subsections (2) and (3) of Industrial Commission Workers' Compensation Rule 502. *Page 7 
23. The formal Agreement of Final Settlement and Release prepared by Defendants and provided to Plaintiff pursuant to the July 9, 2009 Mediated Settlement Agreement contains a list of all known medical expenses incurred as of the date of the agreement, and indicates that Defendants had paid these expenses. Additionally, attached to this formal Agreement of Final Settlement and Release were the material medical, vocational, and rehabilitation reports known to exist.
24. Regarding Plaintiff's medical expenses, Attorney Frances Clement, Defendants' former counsel, testified that Defendant-Employer self-funds its health insurance and, contrary to Plaintiff's testimony, has not asked for reimbursement from Plaintiff for the payment of any medical expenses. Given her relative expertise and experience in this area, the Full Commission accords more weight to the testimony of Attorney Clement than to that of Plaintiff.
25. Based upon the greater weight of the evidence, the Full Commission finds that Plaintiff had sufficient mental capacity on July 9, 2009, to enter into the Mediated Settlement Agreement. Plaintiff understood the nature, scope, and consequences of entering into the Mediated Settlement Agreement. There is insufficient evidence to support a finding that Plaintiff lacked the requisite mental capacity on July 9, 2009.
26. The terms of the parties' settlement agreement obligate Defendants to pay Plaintiff $70,000.00 in exchange for a full and final settlement of her workers' compensation claim.
27. At the time of the alleged injury, Plaintiff earned an average weekly wage of $333.34, which yields a compensation rate of $222.24. *Page 8 
28. The settlement amount of $70,000.00 equates to approximately 315 weeks of temporary total disability compensation at Plaintiff's compensation rate, or a little more than six years.
29. The evidence is insufficient to establish that Plaintiff would be required to use the $70,000.00 to pay or reimburse past medical expenses related to her claim.
30. Given the amount Plaintiff will receive in settlement of this denied workers' compensation claim and the fact that Defendants have paid the medical expenses incurred thus far, the Full Commission finds the settlement agreement between the parties resolving Plaintiff's workers' compensation claim to be fair and just and in the best interests of both parties.
31. Plaintiff failed to establish through competent and credible evidence any fraud, misrepresentation, undue influence, or mutual mistake related to her execution of the Mediated Settlement Agreement and settlement of her workers' compensation case.
32. Mr. Sumwalt provided valuable services to the Plaintiff prior to his withdrawal and is entitled to an attorney's fee in this case. Mr. Sumwalt previously submitted his 25% contingency fee contract to the Deputy Commissioner and requested that, if the Mediated Settlement Agreement were enforced and the settlement agreement approved, he be awarded the reduced fee of $10,000.00 that he agreed to at the July 2009 mediation. This fee amount is reasonable in this case.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission is not a court of general jurisdiction. It has no jurisdiction beyond that conferred upon it by statute. N.C. Gen. Stat. § 97-77; Bryant v. *Page 9 Dougherty, 267 N.C. 545, 148 S.E.2d 548 (1966). The approval of settlement agreements in workers' compensation cases falls within the exclusive jurisdiction of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-17; Holden v. Boone,153 N.C. App. 254, 569 S.E.2d 711 (2002). However, the Commission does not have jurisdiction over agreements such as the handwritten side agreement Plaintiff executed during the July 2009 mediation. Plaintiff must pursue any disputes about the handwritten side agreement and/or any employment or retirement benefits to which she believes she is entitled in another forum.
2. The North Carolina Court of Appeals has identified the appropriate methodology to be used in an evaluation of the validity and enforceability of workers' compensation mediated settlement agreements:
 Compromise settlement agreements, including mediated settlement agreements, "are governed by general principles of contract law." Chappell v. Roth, 353 N.C. 690, 692, 548 S.E.2d 499, 500, reh'g denied, 354 N.C. 75, 553 S.E.2d 36 (2001). "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." Northington v. Michelotti, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995). "To be enforceable, the terms of a contract must be sufficiently definite and certain." Miller v. Rose, 138 N.C. App. 582, 587-88, 532 S.E.2d 228, 232 (2000).
Lemly v. Colvard Oil Company,157 N.C. App. 99, 103, 577 S.E.2d 712, 715 (2003) (emphasis added).
3. In North Carolina, it is a long-established principle that a person seeking to avoid being contractually bound on the grounds of mental incapacity at the time of contract formation has the burden of proof on this point: "The party seeking the privilege of avoidance has the burden of proof on the question of whether he was mentally ill. Everyone is presumed to be sane until the contrary appears." Ridings v. Ridings,55 N.C. App. 630, 633, 286 S.E. 2d 614, 616 *Page 10 
(1982) (citing 2 Stansbury's N.C. Evidence § 238 (Brandis rev. 1973)). The Ridings Court also articulated the level of mental competency required to enter into a binding legal agreement:
 . . . a person has mental capacity sufficient to contract if he knows what he is about [Moffit v. Witherspoon, 32 N.C. 185; Paine v. Roberts, 82 N.C 451], and that the measure of capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly.
Id. at 633, 286 S.E.2d at 616 (citing Sprinkle v.Wellborn, 140 N.C. 163, 181, 52 S. E. 666, 672 (1905)). In the case at bar, Plaintiff has not met her burden of proving that, on July 9, 2009, she lacked the mental capacity required to enter into a contract. Given the level of expertise of her attorney on that day and his judgments, the evidence is insufficient to establish that Plaintiff's psychological state and/or any medications she may have taken rendered her without the capacity or ability to understand the nature, scope, and consequences of her actions.
4. Regarding the sufficiency of the Mediated Settlement Agreement itself, the North Carolina Court of Appeals held in Lemly,supra, that a memorandum signed by the parties following a mediated settlement conference could be a valid agreement subject to the approval of the Industrial Commission if it complies with Workers' Compensation Rule 502(2). Recently, the Lemly decision was followed and cited extensively by the North Carolina Court of Appeals in Chaisson v. Simpson,195 N.C. App. 463, 673 S.E.2d 149 (2009). The Chaisson Court, in enforcing the workers' compensation settlement agreement before it, observed that the Mediation Settlement Agreement enforced inLemly included three important statements:
 (1) a definite settlement amount was to be payable by defendants to claimant, (2) claimant would "execute [a] clincher setting out above terms and other standard language," and (3) "upon approval by [the Industrial Commission], settlement will be paid." *Page 11 
Id. at 476, 673 S.E.2d at 159, (quoting Lemly,supra, at 100-01, 577 S.E.2d at 713). Subsequent to July 9, 2009, Defendants prepared an Agreement of Final Settlement and Release pursuant to terms of the Mediated Settlement Agreement and forwarded it to Plaintiff. This agreement was received by Plaintiff, through her counsel, in a timely fashion. Because the Mediated Settlement Agreement signed by the parties on July 9, 2009, contained the language and substance required by the Lemly and Chaisson cases, and because the resultant Agreement of Final Settlement and Release satisfied the requirements of N.C. Gen. Stat. § 97-17 and Rule 502(2) and (3) of the Industrial Commission Workers' Compensation Rules, the Mediated Settlement Agreement signed by the parties on July 9, 2009, is a valid agreement that is subject to approval by the Industrial Commission.
5. Regarding the approval of the agreement, Rule 502(1) of the North Carolina Industrial Commission Workers' Compensation Rules instructs: "Only those agreements deemed fair and just and in the best interest of all parties will be approved." Upon careful review of the facts and applicable law, the Full Commission finds the agreement entered into in this case to be fair and just and in the best interest of all parties. N.C. Gen. Stat. § 97-17(b)(1); North Carolina Industrial Commission Workers' Compensation Rule 502(1). Moreover, in the present case, Plaintiff has failed to establish fraud, misrepresentation, undue influence, or mutual mistake related to the agreement. N.C. Gen. Stat. § 97-17(a); Glenn v. McDonald's,109 N.C. App. 45, 425 S.E.2d 727 (1993).
6. Plaintiff's former attorney, Vernon Sumwalt, who represented Plaintiff throughout the mediation process and was required to testify in this matter, is entitled to a reasonable attorney's fee of $10,000.00. N.C. Gen. Stat. § 97-90.
 * * * * * * * * * * * *Page 12 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. It is HEREBY ORDERED that the July 9, 2009 Mediated Settlement Agreement is a valid agreement and is APPROVED.
2. Defendants' motion to enforce the July 9, 2009 Mediated Settlement Agreement is hereby GRANTED.
3. Defendants shall pay Plaintiff the lump sum amount of $70,000.00, subject to the attorney's fee approved in paragraph 4 below. Compliance with the terms of the agreement shall discharge Defendants from further liability under the Workers' Compensation Act by reason of the injuries giving rise to this claim. This Order does not purport to approve or address any issue or matter over which the Industrial Commission has no jurisdiction.
4. An attorney's fee of $10,000.00 is approved for Plaintiff's former counsel, Vernon Sumwalt. Defendants shall deduct and pay directly to Plaintiff's former attorney, Vernon Sumwalt, $10,000.00 of the amount ordered to be paid to Plaintiff in Paragraph 3 above.
5. Each side shall bear its own costs.
This the 17th day of November 2010.
 S/___________________
 LINDA CHEATHAM
 COMMISSIONER
CONCURRING: *Page 13 
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1